GREGORY SCHAFFRATH, JR., *et al.*, Plaintiffs-Appellants, v. THE VIL-LAGE OF BUFFALO GROVE *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 86—0880

Opinion filed September 8, 1987.

1000

Frank J. DiBella, Ltd., of Chicago, for appellants.

Peter M. Rosenthal and Scott B. Krider, both of Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago, for appellees.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiffs appeal from an order dismissing their complaint for failure to state a cause of action.

On July 13, 1982, plaintiff Gregory Schaffrath, Jr., age 16, and plaintiff's decedent Patti Wildner, age 15, were passengers in an automobile owned and operated by Paul W. Kaufman, who was 22 years old. At about 12:15 a.m., defendant Officer Steven Haisley, of the Buffalo Grove police department, stopped Kaufman's vehicle in Buffalo Grove because of a loud muffler. The complaint alleges that when Officer Haisley requested Kaufman's driver's license, Kaufman produced four tickets from previous violations, one of which was for a loud muffler. No citation was issued.

Approximately 28 minutes after Officer Haisley stopped the Kaufman vehicle and it was out of the territorial jurisdiction of the village of Buffalo Grove, the car crossed to the left of the center line of Milwaukee Avenue in Niles, Illinois, striking a concrete abutment or pole. The accident occurred about eight miles from the location where Haisley stopped Kaufman. The accident resulted in the death of Patti Wildner and injury to Gregory Schaffrath, Jr. Kaufman was taken to Lutheran General Hospital, where it was determined that he had a blood-alcohol level of 0.091. The minimum statutory requirement for a determination of driving while under the influence of alcohol is 0.10. Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(a)(1).

Plaintiffs Gregory Schaffrath, Jr., his parents, the estate of Patti Wildner, and Patti Wildner's natural father have brought this action against the village of Buffalo Grove and Officer Steven Haisley, as an employee and/or agent of the village of Buffalo Grove, and Officer Haisley as an individual, for the injuries resulting from that accident.

The complaint alleges that the death of Wildner and injury to Schaffrath was a proximate result of Officer Haisley's careless, negli-

gent and wrongful performance of his duties as a law enforcement officer of the village of Buffalo Grove. The complaint further alleges that as a result of the defendants' negligence and malfeasance, plaintiffs were deprived of liberty without due process of law and were further deprived of equal protection of the laws in violation of the fifth and fourteenth amendments of the United States Constitution and the Civil Rights Act (42 U.S.C. sec. 1983 (1982)).

The circuit court granted defendants' motion to dismiss the complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—615.) This appeal followed.

Paul Kaufman, the driver of the vehicle, is not involved in this appeal, but is a named defendant in a separate action pending in the circuit court. Also, governmental immunity is not at issue. A municipality waives the statutory immunity provided in the Local Governmental and Governmental Employees Tort Immunity Act by securing insurance coverage against a particular form of liability. (Ill. Rev. Stat. 1985, ch. 85, par. 9—103(c).) The complaint alleges that the village of Buffalo Grove has insurance covering this type of liability, thus waiving the immunities provided in the Act for the purpose and scope of this appeal.

I

■■ To survive a motion to dismiss, it is not sufficient that a complaint merely allege a duty, but the pleader must allege facts from which the law will raise a duty, and facts must be alleged showing an omission of that duty and resulting injury. (*Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 969, 414 N.E.2d 104.) In considering a motion to dismiss, the pleadings are to be liberally construed with the view of doing substantial justice (*Hayna v. Arby's, Inc.* (1981), 99 Ill. App. 3d 700, 710, 425 N.E.2d 1174), and the court must accept as true all well-pleaded facts and reasonable inferences that can be drawn from those facts (*Panorama of Homes, Inc. v. Catholic Foreign Mission Society, Inc.* (1980), 84 Ill. App. 3d 142, 145, 404 N.E.2d 1104).

Applying these principles of liberal construction to plaintiffs' complaint, for the purposes of this opinion we will assume that Kaufman was intoxicated when he was stopped by Officer Haisley in the village of Buffalo Grove. Plaintiffs allege that the law imposed a duty on the officer to protect the minor passengers in a vehicle operated by an intoxicated driver. Officer Haisley did not arrest the driver.

■■ Generally, law enforcement officials have no duty to protect individual citizens from criminal acts. Their responsibility is to the

general public. (*Santy v. Bresee* (1984), 129 Ill. App. 3d 658, 473 N.E.2d 69, *appeal denied* (1985), 102 Ill. 2d 559.) The duty of the police to preserve the well-being of the community is owed to the public at large rather than to specific members of the community. (*Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214.) This rule rests upon public policy considerations that a police department's negligence, oversights, blunders or omissions are not the proximate or legal cause of harms committed by others. A general duty would put the police in the position of guaranteeing the personal safety of every member of the community. (*Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 445-46, 410 N.E.2d 610, *appeal denied* (1981), 82 Ill. 2d 588.) Plaintiffs acknowledge the existence of this general rule and concede that it precludes recovery.

However, the general rule does not apply and recovery is permitted when the police assume a special relationship to a person so as to elevate that person's status to something more than just being a member of the public. 88 Ill. App. 3d 443, 446, 410 N.E.2d 610.

■ Plaintiffs contend that they have stated a cause of action under the "special duty" exception to this general rule. "In order for a municipality to owe a special duty toward an individual as contrasted with the public at large, the following requirements must be met: (1) the municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there must be allegations of specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be either affirmative or wilful in nature; and (4) *the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the municipality.*" (Emphasis added.) *Curtis v. County of Cook* (1982), 109 Ill. App. 3d 400, 407, 440 N.E.2d 942, *aff'd in part and rev'd in part* (1983), 98 Ill. 2d 158, 456 N.E.2d 116.

■ Assuming the plaintiffs have satisfied the first three requirements to establish a special duty, the only allegations in the pleadings dealing with the fourth requirement indicate that the injury occurred in another municipality out of the presence and apparent jurisdiction of Officer Haisley. Therefore, there is a failure on the part of plaintiffs to adequately allege facts to establish that they were injured while "under the direct and immediate control of employees or agents of the municipality." 109 Ill. App. 3d 400, 407, 440 N.E.2d 942.

## II

■ Plaintiffs acknowledge that it is impossible for them to plead that Officer Haisley was in Niles, Illinois, when the accident occurred.

Therefore, plaintiffs urge this court to create a special exception to the requirement that plaintiffs' injuries must occur while plaintiffs are "under the direct and immediate control of employees or agents of the municipality." They base their argument on the theory that injury to the plaintiffs was foreseeable and therefore gave rise to a duty upon Officer Haisley and the village of Buffalo Grove. In addition, they raise public policy considerations dealing with protection of minors and discouraging driving while under the influence of alcohol.

There is ample authority in this State which precludes recovery in cases involving injury to a minor. Our courts have consistently declined to apply a special duty exception to the general rule because the plaintiff was a minor. (See, *e.g., Stigler v. City of Chicago* (1971), 48 Ill. 2d 20, 268 N.E.2d 26; *Huey v. Town of Chicago* (1968), 41 Ill. 2d 361, 243 N.E.2d 214; *Bell v. Village of Midlothian* (1980), 90 Ill. App. 3d 967, 414 N.E.2d 104.) Therefore, plaintiffs' argument, based on minority, is not persuasive.

■ Plaintiffs also contend that their claim is supported by strong public policy against drunk driving. In support of their contention, plaintiffs rely on several decisions from other jurisdictions.

In *Irwin v. Town of Ware* (1984), 392 Mass. 745, 467 N.E.2d 1292, the plaintiffs alleged that police officers had negligently failed to take into protective custody an automobile driver who was intoxicated and who subsequently caused an accident resulting in harm to the plaintiffs. The accident occurred approximately 10 minutes after the police stopped the intoxicated driver but allowed him to go. The defendants argued that the police officers owed only a duty to the general public to enforce statutes with respect to intoxicated drivers. The court, however, concluded the public duty rule was no bar. The court decided that a special relationship exists between a police officer who negligently fails to remove an intoxicated motorist from the highways and a member of the public who suffers an injury as a result of that failure.

In finding a special relationship, the *Irwin* court relied primarily on the foreseeability of the harm to a member of the public from an officer's failure to act:

"Where the risk created by the negligence of a municipal employee is of immediate and foreseeable physical injury to persons who cannot reasonably protect themselves from it, a duty of care reasonably should be found." 392 Mass. 745, 756, 467 N.E.2d 1292, 1300.

Plaintiffs' reliance on *Irwin* is misplaced because that decision has been rejected in Illinois and in a majority of the courts of other

States. In *Marshall v. Ellison* (1985), 132 Ill. App. 3d 732, 477 N.E.2d 830, while holding the special duty doctrine to be applicable to preclude liability, the court refused to adopt the rationale in *Irwin*, stating:

> "We decline to adopt the approach taken by the court in *Irwin*. First, we know that most courts have refused to find a cause of action in similar cases [citations]. * * *
>
> Most importantly the result reached in *Irwin* is contrary to the established law of this State.
>
> * * *
>
> 'The special duty required to maintain the action cannot be established by the mere fact that someone with whom the officer had prior contact subsequently injured the plaintiff.' [Citation.] Nor should a cause of action arise simply because the officer had prior contact with the plaintiff himself.
>
> In addition, our supreme court has warned against confusing foreseeability with the concept of duty and in using foreseeability to find a duty." 132 Ill. App. 3d 732, 735-36, 477 N.E.2d 830.

*Cain v. Leake* (Colo. App. 1984), 695 P.2d 798, the other decision relied on by the plaintiffs, was reversed by the Colorado Supreme Court *en banc*. See *Leake v. Cain* (Colo. 1986), 720 P.2d 152.

The general rule that a municipality and a police officer are not liable as a result of the failure to make an arrest or to enforce a law in the absence of a special relationship is based on sound public policy. The special duty doctrine developed because there are legitimate and valid reasons for not imposing liability on municipalities and their police officers for injuries allegedly caused by a police officer's failing to make an arrest. These reasons were explained in *Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 410 N.E.2d 610, *appeal denied* (1981), 82 Ill. 2d 588:

> "The duty of the police to preserve a community's well-being is said to be owed to the public at large rather than to specific members of the community [citations]. At first sight the formulation of the general rule seems to express no duty at all; a public rather than private duty provides little if any consolation to the aggrieved individual. Yet violations of the public duty may be punished in criminal proceedings against the offending police officer or department. The rule is sometimes justified on the somewhat murky distinction between propriety and governmental functions; police work falls within the latter category. [Citation.] A more direct explanation rests on considerations of

public policy. The rule embodies the conclusion that a police department's negligence—its oversights, blunders, omissions—is not the proximate or legal cause of harms committed by others. Proximate cause is duty's twin: each concept may be restated in terms of the other, and expressing the problem in terms of duty underscores the policy issues underlying the decision whether to find a duty. [Citation.] The existence of a duty ultimately depends upon choices between competing policies. [Citation.] Recognizing a duty owed generally by the police to individuals, in the absence of special circumstances, would pressure the police to make hasty arrests. A general duty would also put the police in the position of guaranteeing the personal safety of every member of the community." 88 Ill. App. 3d 443, 445-46, 410 N.E.2d 610.

■■ We reject plaintiffs' arguments that a special exception should be created in their favor on the basis of their theory of foreseeabilty, minority or alleged intoxication. Municipalities and police officers should not be put in the position of having their discretion subject to review so that if they fail to make an arrest they can be subject to damages in State court, while if they do make the arrest, they can find themselves defending against civil rights suits based on false arrest. Therefore, it is clear that the general rule, as it stands, that a municipality and a police officer are not liable as a result of the failure to make an arrest or to enforce a law in absence of a special relationship, is based on sound public policy and this general rule will not be disturbed.

### III

■■ Finally, plaintiffs contend that since the defendants voluntarily assumed the duty to protect them, defendants are liable for failure to adequately carry out that assumed duty. In support of this argument, plaintiffs rely on *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 412 N.E.2d 472, which held that the special duty rule did not apply and upheld recovery from the Chicago Housing Authority (CHA) for failing to provide adequate security for the injured plaintiff. The CHA hired a private firm to provide security services from 9 a.m. to 1 a.m. Plaintiff, who was assaulted at a CHA project at 1:15 a.m., alleged that the effect of the part-time security service increased danger to tenants after 1 a.m..

In *Cross*, the Illinois Supreme Court found that the CHA had voluntarily undertaken the providing of partial guard services at one of its properties. In doing so, the court found that the CHA became obli-

gated to use reasonable care not to create an increased danger to its tenants and others lawfully on its premises. Faced with the proprietary nature of the CHA's obligation and faced with the fact that the CHA had affirmatively undertaken the responsibility for providing security at its property, the court held that the CHA would be liable for its failure to adequately provide guard services. 82 Ill. 2d 313, 412 N.E.2d 472.

The *Cross* case is factually inapposite to this case for the reason that Officer Haisley and the village of Buffalo Grove are not being sued because they acted in the capacity of a landlord; instead they are being sued as a governmental body and a governmental employee. Neither Officer Haisley nor the village of Buffalo Grove assumed, expressly or implicitly, an affirmative obligation to provide for the safety of Wildner and Schaffrath. The plaintiffs have not alleged that either Officer Haisley or the village of Buffalo Grove made any promises or took any actions which would have led Schaffrath and Wildner to believe that Officer Haisley had assumed responsibility for their safety.

Unlike the situation in *Cross*, where the CHA was alleged to have actually increased the danger to persons on its property, the complaint in this case does not allege any facts which indicate that Officer Haisley or the village of Buffalo Grove increased the dangers or risks faced by Wildner and Schaffrath.

## IV

█ The plaintiffs argue that the trial court erred in finding no cause of action pursuant to the Civil Rights Act. (42 U.S.C. sec. 1983 (1982).)[1] The essence of plaintiffs' argument is that defendants violated rights to personal security by failing to adequately protect.

One of the initial inquiries in a section 1983 case is whether the conduct complained of deprived the plaintiff of a right, privilege, or immunity secured by the constitution or the laws of the United States. (*Ellsworth v. City of Racine* (7th Cir. 1985), 774 F.2d 182, 184, cert. denied (1986), 475 U.S. 1047, 89 L. Ed. 2d 574, 106 S. Ct. 1265.) The United States Constitution does not include a right to basic public services. (*Jackson v. City of Joliet* (7th Cir. 1983), 715 F.2d 1200, cert. denied (1984), 465 U.S. 1049, 79 L. Ed. 2d 720, 104 S. Ct.

---

[1] 42 U.S.C. sec. 1983 (1982) provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory *** subjects, or causes to be subjected, any citizen of the United States *** to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

1325.) "The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order." (*Bowers v. DeVito* (7th Cir. 1982), 686 F.2d 616, 618.) Thus, standing under no constitutional duty to act, defendants did not effect a deprivation within the meaning of the fourteenth amendment.

We recognize that in certain cases courts have found that the Constitution creates an affirmative duty on the part of governmental units to provide elementary protective services to specified individuals. In every one of those cases, however, the individuals entitled under the Constitution to governmental services were persons with whom the State had created a custodial or other special relationship. (See, *e.g., Estate of Bailey v. County of York* (3d Cir. 1985), 768 F.2d 503; *White v. Rochford* (7th Cir. 1979), 592 F.2d 381.) In the case at bar, the State bore no special relationship to plaintiffs or plaintiff's decedent and hence had no obligation under the Constitution to provide them with protective services. To rule otherwise would render section 1983 a virtual mandate of highway safety.

In the light of the foregoing, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO, P.J., and STAMOS, J., concur.