Laura **STREILER** and James H. Young, as Co-Administrators of the Estate of Donald Streiler, Deceased, Appellants–Plaintiffs,

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, and The Wayne County Board of Commissioners, Appellees–Defendants.**

No. 29A05–9307–CV–247.

Court of Appeals of Indiana,
Fifth District.

Nov. 30, 1994.

Transfer Denied March 31, 1995.

James H. Young, Young & Young, Indianapolis, for appellant.

Robert W. Geddes, Andrea R. Reed, Reid Nelson, Hume Smith Geddes & Green, Indianapolis, John C. Duffey, Russell H. Hart, Stuart & Branigin, Lafayette, for appellee.

## OPINION

RUCKER, Judge.

Plaintiffs–Appellants Laura Streiler and James H. Young, co-administrators of the estate of Donald E. Streiler (collectively referred to as Administrators), appeal the trial court's grant of summary judgment in favor of the Wayne County Board of Commissioners (County) in Streiler's wrongful death action. Administrators raise the following restated issue for our review: whether the trial court erroneously granted summary judgment on the grounds that the County's actions were discretionary functions for which it was immune pursuant to the Indiana Tort Claims Act.

We affirm in part and reverse in part.

At approximately 4:15 p.m. on April 13, 1989, the decedent Donald Streiler was operating his semi-tractor trailer northbound on Round Barn Road in Wayne County. Round Barn Road is bisected by Norfolk and Western Railway tracks which, at the time, were marked by reflectorized crossbucks, a stop sign, and an advance railroad warning sign. Upon reaching the Round Barn Road grade crossing, Mr. Streiler stopped the semi-tractor but then continued onto the tracks directly in front of a westbound train, where he was struck and fatally injured. Administrators' complaint as to Wayne County [1] alleged that the County was negligent in that it failed to install additional warning devices at the Round Barn Road crossing and failed to maintain the crossing in a reasonably safe condition. On March 25, 1993, the trial court granted the County's motion for summary judgment on the grounds that the County

was immune from liability pursuant to Ind. Code § 34–4–16.5–3. This appeal ensued. Additional facts are discussed below where relevant.

When reviewing a grant of summary judgment, our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Montgomery County Farm Bureau Co-op. Ass'n, Inc. v. Deseret Title Holding Corp.* (1987), Ind.App., 513 N.E.2d 193, *reh'g denied.* We must consider the pleadings and evidence sanctioned by Ind.Trial Rule 56(C) without deciding its weight or credibility. Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Houin v. Burger by Burger* (1992), Ind.App., 590 N.E.2d 593. All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Liberty Mutual Ins. Co. v. Metzler* (1992), Ind.App., 586 N.E.2d 897, *trans. denied.*

Administrators first contend that the trial court's grant of summary judgment was erroneous because the County's management of the installation of warning devices was a nondiscretionary function as a matter of law. According to Administrators, the County failed to prove that it consciously weighed competing interests or engaged in a policy-oriented decision-making process, thus precluding a finding of discretionary immunity.

"A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from: ... (6) the performance of a discretionary function" Ind.Code § 34–4–16.5–3(6). Whether a particular act is discretionary and therefore immune is a question of law for determination by the court, although the question may require an extended factual development. *Peavler v. Monroe County Bd. of Comm'rs* (1988), Ind., 528 N.E.2d 40, 46. Our essential inquiry is whether the

---

1. Norfolk and Western Railway Company is not a party to this appeal.

challenged act is the type of function which the legislature intended to protect with immunity. *Id.* Underlying this inquiry is the policy that tort actions should not become vehicles for judicial review of the policy-based decisions of coordinate branches of government. *Id.* at 44; *see Mullin v. Municipal City of South Bend* (1994), Ind., 639 N.E.2d 278, 281. In determining whether governmental acts are discretionary and therefore immune from liability, we employ the "planning-operational" standard. *Peavler,* 528 N.E.2d at 46; *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364, 366. Planning activities, which are immune, are functions involving the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices. *Peavler,* 528 N.E.2d at 45. Decisions about policy formulation which involve assessment of competing priorities, weighing of budgetary considerations, or the allocation of scarce resources are also planning activities. *Voit v. Allen County* (1994), Ind.App., 634 N.E.2d 767, 770, *reh'g dismissed.* Operational functions, to which no immunity attaches, are characterized by the execution or implementation of previously formulated policy. *Greathouse,* 616 N.E.2d at 366–67.

■■ In determining whether the County has engaged in the type of decision making for which it is immune from liability, we must examine both the nature of the governmental act and the decision-making process involved. *Peavler,* 528 N.E.2d at 45. The County must demonstrate that the challenged act or omission was a policy decision made by consciously balancing risks and benefits. *Greathouse,* 616 N.E.2d at 367. Where, as here, acts of omission are alleged, this conscious balancing may be demonstrated by evidence indicating that the governmental entity considered improvements of the general type alleged in plaintiffs' complaint. *Voit,* 634 N.E.2d at 770. Provided that the entity makes such a showing, it need not demonstrate that it considered and rejected the specific improvements alleged. *Id.*

■■ An application of the factors our Supreme Court set forth in *Peavler* to the County's management of its program for warning device installation compels the conclusion that the County engaged in the type of policymaking contemplated by the planning-operational dichotomy. We have previously found a municipality's actions concerning the installation of warning devices to be a discretionary function immune from liability, when accompanied by a policy-oriented decision-making process. *See e.g. Mullen v. City of Mishawaka* (1988), Ind.App., 531 N.E.2d 229, *trans. denied.* Here, the record discloses that in 1988, the County commenced investigating the feasibility of installing additional warning devices at County railroad crossings. The County sheriff, in conjunction with the County attorney and engineer, researched the legality and feasibility of placing stop signs at certain railroad crossings, and the County Board of Commissioners determined whether to approve or disapprove their recommendations. These decisions regarding placement of warning signs were largely governed by federal guidelines for placement of warning signs on highways, County budgetary constraints, and the level of danger and volume of traffic at particular railroad crossings. The record further reveals that the County instituted a federally subsidized railroad upgrading program pursuant to the Highway Safety Act. The federal subsidy, which funded a maximum of two railroad upgrades per year, financed approximately ninety percent of the cost of the upgrades, with the County expending the remaining ten percent. In 1986 the County received a state survey documenting the safety levels of railroad crossings and identifying the Round Barn crossing as among the County's twenty percent most dangerous. The County based its decision whether to upgrade a particular crossing on a combination of factors, including the results of the state survey, the County engineer's recommendations, and the availability of County resources to facilitate the upgrading process. We decline to second-guess the County's management of its program for installation of warning devices, which resulted from decisions involving policy formulation, assessment of competing priorities, and the allocation of scarce resources. Accordingly, the trial court properly held that the County was

immune from liability as to Administrators' claim of negligent failure to install additional warning devices.

■ Administrators' claim of negligent failure to maintain the railroad crossing in a reasonably safe condition is not similarly barred by discretionary function immunity. Administrators contend that the trial court's grant of summary judgment was overly inclusive because the County failed to demonstrate the existence of a policy-oriented decision-making process concerning maintenance activities.

As we have already emphasized, discretionary function immunity applies only if the County's decisions may be properly characterized as policy decisions resulting from a conscious balance of risks and benefits. *Greathouse,* 616 N.E.2d at 367. Here, the record reveals no such policy-oriented process with respect to maintenance activities at railroad crossings. County has not delineated, nor does our examination of the Rule 56(C) materials before us reveal, sufficient facts supporting the County's claim that it engaged in policy formulation and weighed alternatives in performing maintenance. To the contrary, the record reveals that maintenance activities were "a minor thing that we don't follow and track." *Record* at 316. In keeping with our mandate to construe discretionary function immunity narrowly, *Logestan v. Hartford Steam Boiler Inspection* (1993), Ind.App., 626 N.E.2d 829, 832, *trans. denied,* we find that Administrators' claim of negligent maintenance is not barred by discretionary function immunity.

■ County contends the trial court's entry of summary judgment is nevertheless sustainable on the grounds that Streiler was contributorily negligent as a matter of law. In support, County asserts that the approaching train was clearly visible and thus "in failing to look for and listen for the approaching train, the decedent was contrib-

utorily negligent." *Appellee's Brief* at 24. Administrators counter that ample facts exist to demonstrate that the train was not clearly visible because Streiler's attention was likely diverted due to the allegedly poor condition of the railroad crossing.

■ Generally, issues such as negligence and contributory negligence are not appropriate for summary judgment. *Brockmeyer v. Fort Wayne Public Transp.* (1993), Ind.App., 614 N.E.2d 605, 607, *trans. denied; Claxton v. Hutton* (1993), Ind.App., 615 N.E.2d 471, 474. Rather, when the facts are subject to more than one inference, contributory negligence is most appropriately a matter for the jury. *Brockmeyer,* 614 N.E.2d at 607. Only when the facts are undisputed may the question become one of law. *Id.*

In considering the evidence and all inferences to be drawn therefrom in a light most favorable to Administrators; the nonmovants, we agree with Administrators that the facts surrounding the issue of contributory negligence are disputed and subject to more than one inference. We are thus constrained to reverse the trial court's entry of summary judgment as to Administrators' claim of negligent failure to maintain the crossing.

The trial court's entry of summary judgment on the issue of negligent failure to install additional warning devices is affirmed. We reverse the court's entry of summary judgment on Administrators' claim of negligent maintenance of the railroad crossing.

SHARPNACK, C.J., and J. KIRSCH, J., concur.