Charles MINKS, Appellant–Plaintiff,

v.

Javier PINA, City of Hammond, City of Hammond Police Department, Fred Behrens, Chief of Police, Officer Mark Steven Kruse, and Officer James Neal Houpt, Appellees–Defendants.

Nancy Smith, Non-custodial parent,

Delores Nichols, Intervening Plaintiff,

Javier Pina, Defendant.

No. 45A03–9708–CV–273.

Court of Appeals of Indiana.

April 30, 1999.

Rehearing Denied June 15, 1999.

David W. Holub, David M. Hamacher, Ruman, Clements, Tobin & Holub, P.C., Hammond, Indiana, Attorneys for Appellant.

David W. Weigle, David W. Weigle & Associates, Hammond, Indiana, Attorney for Appellees.

## OPINION

BAKER, Judge

Plaintiff–Appellant Charles Minks appeals the trial court's dismissal of his complaint against Defendants–Appellees the City of Hammond, the City of Hammond Police Department, Fred Behrens, Chief of Police, Officer Mark Steven Kruse and Officer James Neal Houpt (collectively "the Hammond defendants") pursuant to an Ind. Trial Rule 12(B)(6) motion to dismiss.[1] Specifically, Minks argues that the trial court erred in finding that: (1) the Hammond defendants were immune from liability under the Indiana Tort Claims Act; (2) Minks had not stated a claim for relief under state law; and (3) Minks had failed to state a claim under 42 U.S.C. § 1983.

### FACTS [2]

On January 14, 1996, Pina and his teenaged step-son, Victor Bolivar ("Bolivar") attended a wedding celebration, where both consumed large quantities of intoxicating beverages. They left the party at approximately 11:50 p.m., and Pina was driving at his own insistence.

Pina and Bolivar were pulled over by Officer Kruse of the Hammond Police Department as they were traveling northbound on Calumet Avenue. Officer Kruse instructed Bolivar to drive the vehicle because Pina was too intoxicated to continue driving, and indicated that he would lock them both up if Bolivar did not drive. A second officer, Officer Houpt, arrived on the scene, and the two officers determined not to arrest or detain Pina and Bolivar because of the amount of time it would take to process the necessary paperwork. Subsequent blood alcohol tests revealed that Pina's B.A.C. level was .266%

---

1. Defendant Javier Pina ("Pina") was named in the complaint but is not a party to this appeal.

2. Due to the high quality of the briefing done by the parties, oral argument is not necessary. The petition for oral argument is denied.

{

}

and Bolivar's B.A.C. level was .267%. Neither of the officers conducted field sobriety tests or checked to see if Bolivar had a valid driver's license. Bolivar had never been issued a driver's license in any state.

After the officers left, Pina apparently persuaded Bolivar to allow Pina to continue driving. Pina drove his vehicle southbound on Calumet Avenue in Hammond, Indiana. Jason Minks was driving a vehicle owned by him and his custodial parent, Minks, northbound on Calumet Avenue at approximately midnight on that same date. Michael Nichols and Tracy Tyrka were passengers in that vehicle. Pina drove his vehicle into the rear of another vehicle, crossed the center line, and collided with Jason Minks' vehicle. Jason Minks suffered serious injuries and ultimately died, as did his passenger, Michael Nichols. Tracy Tyrka, the other passenger in that vehicle, was injured in the accident.

Minks filed his first amended complaint for damages and jury demand on July 11, 1996. On September 6, 1996, the Hammond defendants filed their joint motion to dismiss and memorandum in support thereof. On November 6, 1996, the trial court granted that motion to dismiss.

On November 18, 1996, Minks filed a second amended complaint for damages and jury demand. Three defendants, Police Chief Behrens, Officer Kruse, and Officer Houpt, who were not named in the first complaint, were named in the second complaint. On December 19, 1996, the Hammond defendants filed a motion to dismiss the second complaint and memorandum in support thereof. On February 20, 1997, Minks filed his memorandum of law in opposition to the motion to dismiss. On April 7, 1997, the trial court granted the Hammond defendants' motion to dismiss the second complaint. The trial court's order read in part as follows:

The Court now finds that the named Defendants owed no private duty to the Plaintiff and no special relationship to the Plaintiff. The Court further finds that the named Defendants are immune under I.C. 34–4–16.5–3–6.[sic] The Plaintiff's Complaint therefore fails to state a claim for relief under state law.

Plaintiff's claim for relief under 42 U.S.C. § 1983 must also fail. Though Plaintiff has added allegations into the Second Amended Complaint to answer the First Motion to Dismiss filed by the Defendants, the Plaintiff's Complaint still fails to state a claim for relief. The line of cases relied upon by the Defendants, under *DeShaney v. Winnebago,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249, requires that the Plaintiff demonstrate a greater danger to the motoring public than otherwise existed. Also see *Reed v. Gardner,* 986 F.2d 1122 (1993).

IT IS NOW THERFORE [sic] ORDERED that the Plaintiff's Second Amended Complaint against Defendants, City of Hammond, City of Hammond Police Department, Fred Behrens, Chief of Police, Officer Mark Steven Kruse and Office [sic] James Neal Houpt is hereby dismissed pursuant to Trial Rule 12(B)(6) for failure to state a claim for which relief can be granted.

(R. 171–72).

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing a 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, this court accepts as true the facts alleged in the complaint. *Hudgins v. McAtee,* 596 N.E.2d 286, 288 (Ind.Ct.App.1992). A T.R. 12(B)(6) motion to dismiss tests the legal sufficiency of the complaint. *Right Reason Publications v. Silva,* 691 N.E.2d 1347, 1349 (Ind.Ct.App. 1998). When reviewing a T.R. 12(B)(6) motion to dismiss, we view the pleadings in the light most favorable to the non-moving party, and draw every reasonable inference in favor of that party. *Id.* We will affirm a successful T.R. 12(B)(6) motion when a complaint states a set of facts, which, even if true, would not support the relief requested in that complaint. *Id.* Moreover, we will affirm the trial court's grant of a motion to dismiss if it is sustainable on any theory or basis found in the record. *Id.*

## II. Indiana Tort Claims Act

Governmental immunity from suit is regulated by the Indiana Tort Claims Act (the Act), IND.CODE § 34–13–3–3.[3] *Yerkes v. Heartland Career Ctr.*, 661 N.E.2d 558, 560 (Ind.Ct.App.1995), *trans. denied.* Governmental entities are subject to liability for torts committed by their agencies or employees unless one of the immunity provisions of the Act applies. *Id.* Moreover, whether a governmental entity is immune from liability under the Act is a question of law for the courts, although it may include an extended factual development. *State v. Livengood by Livengood*, 688 N.E.2d 189, 192 (Ind.Ct.App. 1997).

Here, the dispositive issue is whether the Hammond defendants are immune from liability under subsection (7) of the Act.[4] That exception to liability under the Act reads as follows:

A governmental entity or an employee acting within the scope of employment is not liable if a loss results from:

. . . .

(7) the adoption and enforcement of or failure to adopt or enforce a law, including rules and regulations, unless the act of enforcement constitutes false arrest or false imprisonment; . . . .

3. At the time of trial, the Act appeared in IND. CODE § 34–4–16.5–3. However, it is now located at I.C. § 34–13–3–3.

4. Because we find this issue dispositive, we need not address whether the Hammond defendants are immune under subsections (6) and (9) of the Act or whether Minks has stated a claim for relief under state law.

5. Additionally, while not necessary to our resolution of this issue, we feel compelled to confront the dissent's argument that the Hammond defendants owed a private duty to Minks. Indiana case law has consistently held that a private duty arises when the relationship between the parties creates a duty owed to a particular individual and not the public at large. *See Mullin*, 639 N.E.2d at 283; *Greathouse v. Armstrong*, 616 N.E.2d 364, 368 (Ind.1993); *Aldridge v. Indiana Dept. of Natural Resources*, 694 N.E.2d 313, 316 (Ind.Ct.App.1998), *trans. denied; Simpson's Food Fair, Inc. v. City of Evansville*, 149 Ind.App. 387, 391, 272 N.E.2d 871, 874 (1971). Moreover, in *Mullin*, our supreme court adopted the following three-part test to determine if such a duty has arisen:

IND.CODE § 34–13–3–3(7). Our supreme court has explained that the scope of "enforcement" extends well beyond traditional law enforcement activities, but is "limited to those activities in which a governmental entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof." *Mullin v. Municipal City of South Bend*, 639 N.E.2d 278, 283 (Ind.1994) (citing *Quakenbush v. Lackey*, 622 N.E.2d 1284, 1287 n. 3 (Ind. 1993)).

In an attempt to avoid the harsh result of this provision, Minks argues that his second amended complaint does not allege negligence for the failure to arrest Pina or Bolivar, but, rather, bases the alleged negligence on the officers' actions after deciding not to make an arrest. Specifically, Minks asserts that the officers' direction that Bolivar drive home instead of Pina did not constitute enforcement or failure to enforce the law.

While we recognize the egregious conduct of the officers in this instance, we are not persuaded that their actions were outside the scope of enforcement, or failure to enforce, which was contemplated by the Act.[5] In his second amended complaint,

(1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party;
(2) knowledge on the part of the municipality that inaction could lead to harm;
(3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking.
*Id.* at 284.

Applying this test, the Hammond defendants clearly did not owe a private duty to Minks. The Hammond defendants had no contact with Minks and, therefore, could not have offered any assurances specifically to him or caused him to rely. Moreover, we do not believe that it is our place to follow in the footsteps of the supreme judicial court of Massachusetts towards the abolition of the public duty rule which has so recently been applied by our supreme court in *Mullin. See Jean W. v. Commonwealth*, 414 Mass. 496, 610 N.E.2d 305 (1993) (announcing, in a plurality opinion, its intent to abolish the public duty rule because the rule had not been predictably applied and had often been criticized as resulting in a "tortured analysis ... to avoid such harsh results without squarely facing the underlying problem" and specifically noting its decision in

Minks specifically alleges that the officers "knew or should have known that both of those individuals [Pina and Bolivar] were dangerous and were likely to cause bodily harm to others, if not controlled, yet they failed to exercise reasonable care to control them, in order to prevent them from doing such harm...." Record at 76. Therefore, it is apparent that the basis of Minks' negligence claim is that the officers failed to properly enforce the law, placing the government's activity squarely within the immunity provision. Moreover, we decline to establish a bright line rule that any actions after an officer determines not to arrest an individual are no longer considered enforcement.

Finally, while we whole heartedly agree with the dissent that the officers had several safe options available to them outside of making an arrest, we cannot disregard the Act simply to avoid a harsh result in the instant case. Any injustice that may occur from allowing the officers to hide behind a badge of immunity should properly be addressed by the General Assembly which adopted such legislation.

### III. § 1983 CLAIM

■■■ A government official who, while acting under color of state law, deprives an individual of constitutionally protected rights may be subject to personal liability for civil damages pursuant to 42 U.S.C. § 1983. *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995). The parties do not dispute that the first element "acting under color of state law" was sufficiently pleaded in the second amended complaint. The Hammond defendants argue that there was no proper allegation of deprivation of a constitutionally protected right sufficient to withstand their motion to dismiss. There are two parts to the second element: (1) a deprivation of a federally protected right, and (2) the defendant's conduct must have caused the deprivation. *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989).

Minks contends that Officers Kruse and Houpt deprived Pina and Bolivar's rights to life and liberty and deprived Jason Minks of

his right to life without due process. Minks claims that Pina and Bolivar were deprived of their liberty interests when they were directed by the officers in the manner in which they were to proceed on their way home after the officers determined not to arrest them. Minks claims that Jason Minks was deprived of his right to life when the officers failed to protect him from the known danger brought about by the officers' failure to remove drunk drivers from the roadways. He alleges that the officers created a dangerous situation which exposed Jason Minks to danger.

Initially, we note that while neither party raises this point, we do not believe that Minks has standing to raise a deprivation of rights on behalf of Pina and Bolivar. Therefore, we will not address that contention and turn instead to the allegation of the deprivation of Jason Minks' rights.

■■■ Minks' allegation in the second amended complaint reads as follows:

As a direct and proximate result of the unconstitutional conduct of Officers Kruse and Houpt, the Plaintiff's decedent, Jason Minks, suffered serious injuries and endured physical and mental pain, incurred hospital and medical expenses and ultimately died as a result of said injuries; and the custodial parent and siblings of Jason Minks were proximately harmed and are entitled to all statutory and common law damages.

(R. 78). Therefore, for purposes of a T.R. 12(B)(6) motion to dismiss, Minks has alleged that the officers' conduct caused Jason Minks' deprivation. Next, we turn to the issue of whether the complaint sufficiently alleges the violation of a constitutionally protected right. Minks' claim is one of substantive due process; that is that the officer deprived Jason Minks of his right to life without due process.

In *DeShaney v. Winnebago County Dept. Of Social Services*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the United States Supreme Court stated that the Due

---

*Irwin v. Ware*, 392 Mass. 745, 467 N.E.2d 1292 (1984) as such an example of this unpredictabili-

ty).

Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." The Court further stated that nothing in the language of the Due Process Clause itself requires the state to protect the life, liberty, and property of its citizens against invasion by private actors. *Id.* at 196, 109 S.Ct. 998. The Court went on to state that the clause is a limitation on the State's power to act, not a guarantee of certain minimal levels of safety and security. *Id.*

In *DeShaney,* the custody of a young child was awarded to his father following a divorce. County social service authorities were contacted on several occasions about suspected child abuse. The county authorities took steps to protect the boy, but did not remove the boy from the father's custody. Ultimately, the father beat the boy so severely that he suffered brain damage and was permanently mentally impaired. The boy's mother and the boy brought a § 1983 action against the authorities claiming that they had failed to protect the boy from his father's violence of which the county authorities should have known.

The Court stated that the Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression. *Id.* While acknowledging the tragedy involved in the case, the Court stated that the purpose of the Due Process Clause was to protect the people from the State, not to ensure that the State protected them from each other. *Id.* The Due Process Clause confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government may not deprive the individual. *Id.* The Court concluded its analysis by holding that a State's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause. *Id.* at 197, 109 S.Ct. 998.

In *Reed v. Gardner,* 986 F.2d 1122 (7th Cir.1993), *cert. denied,* 510 U.S. 947, 114 S.Ct. 389, 126 L.Ed.2d 337 (1993), police officers pulled over and removed the original driver of a vehicle leaving behind a drunk passenger. Subsequently, the passenger drove the vehicle, crossed the center line of a road, and caused a head-on collision with a family, the Reeds, in another vehicle. The collision resulted in one fatality, the loss of a fetus, and injuries to other passengers in the second vehicle. The Reeds brought a § 1983 claim against the officers involved in the initial stop which resulted in the drunk passenger assuming control over the first vehicle. The district court dismissed the § 1983 claims.

The Seventh Circuit Court of Appeals, in following *DeShaney,* stated that inaction by the state, even where a danger is known, is not enough to trigger a Due Process Clause obligation. *Reed,* 986 F.2d at 1125. The state must have limited in some way the liberty of a person to act on his own behalf. *Id.* The Seventh Circuit went on to say that *DeShaney* left open the door for liability in situations where the state created a dangerous situation or placed citizens in a position of increased vulnerability to danger. *Id.* The court wrote that *DeShaney* made it clear that police officers have no affirmative obligation to protect citizens from drunk drivers. *Id.* In the opinion of the court, police officers are not subject to § 1983 liability for exchanging one drunk driver for another drunk driver. *Id.* In that situation, the same danger to citizens exists with or without state intervention. *Id.*

■ We recognize that while U.S. Supreme Court decisions pertaining to federal questions are binding on state courts, lower federal court decisions may be persuasive, but have non-binding authority on state courts. *Indiana Dept. of Public Welfare v. Payne,* 622 N.E.2d 461, 468 (Ind.1993), *trans. denied.* We respectfully consider those decisions of the Seventh Circuit. *Id.* In light of the U.S. Supreme Court decision in *DeShaney,* and the decision of the Seventh Circuit in *Reed,* we agree with the trial court that Minks has not stated a claim which would subject the officers to § 1983 liability.

■ Minks further argues that the remaining Hammond defendants are liable under § 1983 because the execution of the cus-

tom of not arresting or detaining drunk drivers by Hammond police officers results in injury to the motoring public. As we have previously held, if the plaintiff suffered no constitutional violation, as a matter of law, no custom, practice or policy could have proximately caused the plaintiff's constitutional rights to be violated. *See Slay v. Marion County Sheriff's Dept.*, 603 N.E.2d 877, 882 (Ind.Ct.App.1992). Therefore, we find that the trial court did not err in either of its determinations regarding Minks' § 1983 claims.

## CONCLUSION

In light of our resolution of the issues set forth above, we conclude that the trial court properly granted the Hammond defendants' T.R. 12(B)(6) motion to dismiss based upon the Indiana Tort Claims Act. We further hold that the trial court correctly determined that Minks failed to state a claim based upon § 1983.

Judgment affirmed.

SHARPNACK, C.J., concurs.

RATLIFF, S.J., concurs in part and dissents in part, with opinion.

RATLIFF, Senior Judge, concurring and dissenting

I respectfully dissent to section II, the section of the majority opinion which holds that the Hammond defendants are immune from liability pursuant to the Indiana Tort Claims Act, specifically Ind.Code § 34–13–3–3(7).

When ruling upon the Hammond defendants' motion to dismiss the first amended complaint, the trial court determined that the Hammond defendants were immune from liability under Ind.Code § 34–4–16.5–3(7), now codified at Ind.Code § 34–13–3–3(7). However, the trial court did not rely upon this section in ruling upon the second amended complaint. The majority opinion holds that this section of ITCA is dispositive on the issue of immunity from suit. Ind.Code § 34–13–3–3(7) reads as follows:

A governmental entity or an employee acting within the scope of employment is not liable if a loss results from:

\* \* \*

(7) the adoption and enforcement of or failure to adopt or enforce a law, including rules and regulations, unless the act of enforcement constitutes false arrest or false imprisonment; . . . .

Our supreme court in *Quakenbush v. Lackey*, 622 N.E.2d 1284 (Ind.1993), examined the common law in this area prior to the enactment of ITCA and case law since the enactment of ITCA. The supreme court found that governmental immunity for the breach of a private duty had been virtually abolished by judicial decisions. *Id.* at 1288. Acts or omissions of governmental entities would be subject to liability in those situations where a private duty owed to an individual was breached. *Id.*

The Hammond defendants relied upon this subsection for immunity because, they argued, the first amended complaint alleged that they were negligent in failing to arrest Pina. They also rely upon this subsection in defending against the second amended complaint. I find persuasive Minks' argument that he has alleged in his second amended complaint negligence in the conduct of the officers after the decision not to arrest was made. He argues that the second amended complaint alleges that the police officers were negligent in failing to determine if Bolivar had a valid driver's license, as well as, negligent in instructing intoxicated individuals on how to proceed home, among other things, after the decision not to arrest had been made. My reading of the second amended complaint has led me to the conclusion that there was no allegation of negligence relating to the failure to arrest Pina or Bolivar, but rather, an allegation of the lack of use of reasonable care in acting after the decision not to arrest was made. Therefore, I would hold that the Hammond defendants' reliance on this subsection for immunity is misplaced.

The majority opinion discusses the scope of enforcement and our supreme court's explanation of that concept as being "limited to

those activities in which a governmental entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof." Slip op. at 6–7. Even under that standard, I believe Minks' complaint survives a motion to dismiss. If the Hammond defendants were compelling or attempting to compel Pina to obey laws, rules or regulations, it seems logical that the officers would have checked to see if Bolivar was intoxicated, if Bolivar were licensed to drive a vehicle, and if Bolivar previously had operated a motor vehicle on the highway. Minks has alleged that none of this was done. I believe that these allegations survive the test for a motion to dismiss. If Minks can prove what he has alleged, the officers placed a more intoxicated driver behind the wheel of the car without determining if he was sober, licensed, or familiar with the operation of a motor vehicle.

Nonetheless, the majority opinion holds that the officers' conduct fell within the scope of enforcement or failure to enforce a law. Because I disagree with the majority's position that this subsection applies, the next issue which must be addressed is the issue of whether the Hammond defendants owed a private duty to Minks. In *Greathouse v. Armstrong*, 616 N.E.2d 364 (Ind.1993), our supreme court first discussed what has been labeled the public duty/private duty dichotomy. The court stated that in order for a party to recover in an action against a governmental entity there must have been a breach of duty owed to a private individual. *Id.* at 368. The court held that liability to an individual would not lie where a government entity owed a duty to the public as a whole. *Id.* The plaintiff must show a special duty or relationship which would entitle him or her to recovery. *Id.* The court went on to state that the duty, in general, must be particularized to an individual. *Id.* However, when applying those principles to the facts of the case before it, the court stated that the actions of the governmental entity did not increase the risk of harm to the plaintiff. *Id.* at 369.

In *City of Gary v. Odie*, 638 N.E.2d 1326, 1330 (Ind.Ct.App.1994), in addressing an emergency 911 call, this court stated that a private duty must be particularized to an individual. We stated that in specific circumstances a governmental entity can narrow an obligation it owes to the general public into a special duty to an individual. *Id.* In that case we adopted a four-part test to determine if a private duty was owed to the plaintiff. *Id.* at 1333–1334. However, the supreme court in *Mullin v. Municipal City of South Bend*, 639 N.E.2d 278, 284 (Ind.1994) adopted a three part-test to determine if a private duty exists.

Once the stop was made, the Hammond defendants had several options available to them including impounding the vehicle temporarily until it could be released safely. The conduct described in the complaint, if proven, is so egregious that justice would not be served by allowing the officers to hide behind ITCA immunity from liability for their unreasonable conduct. Moreover, if the facts as alleged are proven, the officers should have anticipated the possibility of a switch in drivers once Pina and Bolivar proceeded down the road.

As case law has developed so has the trend toward adopting different tests to avoid the oftentimes harsh effect of the application of the public duty versus private duty rule. The majority holds that any argument about the injustice which occurs from application of the rule should be addressed to the General Assembly which adopted ITCA. Again, I must disagree with the majority's reasoning.

ITCA did away with sovereign immunity, but provided for some exceptions to government liability. The statute talks about immunity from suit for enforcement or failure to enforce a law. Rules of statutory construction require us to construe strictly those statutes which are in derogation of common law against limitations on a claimant's right to bring suit. *Tittle v. Mahan*, 582 N.E.2d 796, 800 (Ind.1991). Moreover, when the legislature enacts a statute in derogation of common law, we presume that the legislature is aware of the common law, and does not intend to make any change beyond what is declared in express terms or by unmistakable implication. *Id.* Since statutes granting immunity from suit should be strictly con-

strued, it logically follows that we should liberally construe statutes against granting immunity.

The majority suggests that the position advocated by the dissent is one which should be presented to the legislature in order to effect a change in the statute. I would suggest that the appropriate course of action which needs to be taken is a proper interpretation of the existing statute. Nowhere in the statute does one find the establishment of the public duty versus private duty rule. That rule was case-law created, and its survival or demise is properly before us on appeal.

In *Jean W. v. Commonwealth,* 414 Mass. 496, 610 N.E.2d 305, 307 (1993), the supreme judicial court of Massachusetts stated as follows regarding the public duty versus private duty rule:

> We have concluded that our prior efforts to distinguish viable claims from those subject to dismissal by use of the public duty-special relationship dichotomy have not succeeded in producing a rule of predictable application ... [W]e note that the result has been to resurrect effectively the antiquated and outmoded concepts of sovereign immunity which we and the Legislature have sought to shed.

The court analyzed the problems inherent in the public duty rule and the Massachusetts Tort Claims Act. The court stated that most public employees when they are acting in the scope of their employment are doing so for the public good. *Id.* at 309. Public employers would be exempt from tort liability for the negligence of most of their employees under this theory. *Id.* The court reasoned that liability would exist only where the legislature designated by statute that certain individuals were intended to benefit from certain public acts. *Id.*

The court noted that a public employee's duty to perform an act may arise from a statute, but that employee's duty to perform the act with reasonable care arises from the common law of negligence. *Id.* at 312. In support of its intention to abolish the public duty rule, the court remarked that those criticizing the rule have focussed on the unfairness "inherent in a rule that results in a

duty to none when there is a duty to all," and that the result often is a "tortured analysis ... when courts seek to avoid such harsh results without squarely facing the underlying problem." *Id.* at 313.

The officers cite to cases in other jurisdictions where no private duty or special relationship was found. *See Lehto v. City of Oxnard,* (1985) 171 Cal.App.3d 285, 217 Cal. Rptr. 450 (officers who stopped intoxicated motorist for traffic violation and released motorist owed no duty to severely injured plaintiff who was a passenger in a vehicle subsequently hit by that motorist); *Schaffrath v. Village of Buffalo Grove,* (1987) 160 Ill.App.3d 999, 112 Ill.Dec. 417, 513 N.E.2d 1026 (officer who allowed motorist to continue after traffic stop had no special relationship with minor passengers injured and killed in motorist's collision with concrete abutment twenty-eight minutes later); *Phillips v. City of Billings,* (1988) 233 Mont. 249, 758 P.2d 772 (officers were not liable to passengers injured in collision with intoxicated motorist previously questioned by officers). I disagree with those cases for the reasons mentioned above. Officers Houpt and Kruse had several options available to them which would have been more reasonable than the course alleged to have been chosen in the complaint.

Other jurisdictions have found liability in situations such as the case at bar. In *Irwin v. Ware,* 392 Mass. 745, 467 N.E.2d 1292, 1303–1304 (1984), the supreme court of Massachusetts concluded that a special relationship exists between a police officer who negligently fails to remove an intoxicated motorist from the highway, and a member of the motoring public who suffers injury as a result of that failure. The court stated the following:

> [T]he threat here (intoxicated driving) is immediate; it threatens serious physical injury; the threat is short-lived. ....; and the plaintiffs (the motoring public) have no chance to protect themselves. Where the risk created by the negligence of a municipal employee is of immediate and foreseeable physical injury to a person who cannot

reasonably protect themselves from it, a duty of care reasonably should be found. 467 N.E.2d at 1300.

I find this analysis to be helpful in the resolution of this issue. While I acknowledge our supreme court's opinions regarding the tests to be used for determining whether a public versus private duty exists, for purposes of review of the T.R. 12(B)(6) motion to dismiss, I would hold that Minks has pleaded facts which, if proven, establish that Officers Kruse and Houpt owed a private duty to members of the motoring public traveling upon the stretch of road also traveled by Pina and Bolivar after the officers instructed Pina and Bolivar on how to proceed once the decision not to enforce the law was made. The duty they owed was not one owed to the general public, nor was it one owed to the entire motoring public. Surely, it is reasonable for the motoring public to expect that law enforcement officers would not turn drunk drivers out on the roadways. Surely, law enforcement officers owe a duty to motorists not to place them in harm's way.

Minks' second amended complaint alleges that subsequent blood alcohol content test results showed that Pina's B.A.C. level was .266% and Bolivar's B.A.C. level was .267%. Officers Houpt and Kruse are alleged to have been standing within a conversational distance from Pina and Bolivar at the time of the stop. The complaint alleges that the officers determined not to arrest Pina even though they thought he was too intoxicated to continue driving. The officers then directed the also intoxicated Bolivar to drive the vehicle, threatening incarceration for both if those directions were not followed, after the decision not to arrest had been made.

Because I would hold that the Hammond defendants are not immune from suit under the exception for enforcement of or failure to

enforce the law, the next issue which needs to be addressed is whether the Hammond defendants are immune from suit under the discretionary function section of ITCA.[6] Our supreme court has rejected the ministerial /discretionary test in favor of the planning/operational test to determine if a government action is discretionary. *Peavler v. Board of Commissioners of Monroe County,* 528 N.E.2d 40, 46 (Ind.1988). Immunity is necessary for basic planning and policy-making functions in order to avoid the chilling effect on the ability of the government to deal effectively with difficult policy issues. *Id.* at 44. Again, this immunity must be construed narrowly because it is an exception to the general rule of liability. *See Id.* at 46. Planning activities, which are protected by immunity from suit, are functions involving the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices. *Streiler v. Norfolk & Western Ry.,* 642 N.E.2d 1019, 1022 (Ind.Ct.App.1994). Operational functions, to which no immunity attaches, are characterized by the execution or implementation of previously formulated policy. *Id.*

A review of the complaint reveals that there are no allegations which describe activity on the part of the Hammond defendants which would constitute the weighing of risks and benefits in the process of planning and making public policy decisions. I would hold that the allegations in the complaint, if proven, do not place the government's activity squarely within this immunity provision. I would hold that the trial court erred in granting the Hammond defendants' motion to dismiss based upon this section of ITCA.

The Hammond defendants also asserted immunity from suit under the ITCA exception for an act or omission of another.[7] The

---

6. This section of ITCA is currently located at Ind.Code § 34–13–3–3(6) and provides as follows:

A government entity or an employee acting within the scope of employment is not liable if a loss results from:

\*　\*　\*　\*　\*　\*

(6) the performance of a discretionary function;

7. This section currently is located at Ind.Code § 34–13–3–3(9) and provides as follows:

A governmental entity or an employee acting within the scope of employment is not liable if a loss results from:

\*　\*　\*　\*　\*　\*

(9) the act or omission of someone other than the governmental employee.

Hammond defendants contend that they are entitled to immunity from suit because the damages alleged in the complaint proximately were caused by the act of a third person and not by the Hammond defendants.

In *Hinshaw v. Board of Commissioners of Jay County,* 611 N.E.2d 637, 640–641 (Ind. 1993), the supreme court held that the language of this subsection was ambiguous, and that immunity under this subsection applied in actions where the plaintiff sought to impose vicarious liability upon the government because of third party conduct. In the present case, Minks has alleged that the Hammond defendants were negligent in the manner in which they detained and investigated Pina and Bolivar. The Hammond defendants claim that Pina's negligence absolves them of liability. However, because Minks is not seeking to impose vicarious liability on the government, I would hold that this subsection of ITCA does not apply.

I would hold that the allegations in the second amended complaint are sufficient to withstand a T.R. 12(B)(6) motion to dismiss and that the Hammond defendants are not immune from suit under ITCA.

Minks also asserts that he has stated several state law causes of action against Officers Kruse and Houpt which should have survived the motion to dismiss.[8] Of those claims, I would hold that Minks' allegation of negligent entrustment of a vehicle should have survived the motion to dismiss.[9]

To establish a claim for negligent entrustment of a vehicle, it must be shown that the defendant entrusted the vehicle to the driver with the knowledge that the driver was incompetent to drive. *Roessler v. Milburn,* 692 N.E.2d 1377, 1379 (Ind.Ct.App.1998). One is incompetent to drive if he or she is incapacitated, uninstructed in the vehicle's use, or unfamiliar with the dangers of using the vehicle. *Id.* A party is liable if he or she has actual and immediate knowledge that the driver is unfit to drive at the time of entrustment. *Id.* We have interpreted incompetency to include intoxication. *See Stocker v. Cataldi,* 489 N.E.2d 144, 145 (Ind.Ct.App. 1986); *Johnson v. Owens,* 639 N.E.2d 1016, 1022 (Ind.Ct.App.1994). Moreover, we have held that one may be liable for another's negligent use of a vehicle without being an owner of the vehicle. *Johnson,* at 1021.

Minks cites to an opinion from the Idaho Supreme Court, *Ransom v. City of Garden City,* 113 Idaho 202, 743 P.2d 70 (1987), to support his position that the officers had control of Pina's vehicle for purposes of the theory of negligent entrustment. I find this case to be persuasive here. The officer, in *Ransom,* stopped a vehicle and arrested the intoxicated driver. The officer, who had determined that the passenger also was intoxicated, removed the vehicle from the road; however, the officer gave the keys to the car to the passenger at the request of the driver. After the officer left with the driver in custody, the passenger subsequently drove the vehicle and was involved in a head-on collision with the plaintiffs who were injured in the collision.

In *Ransom,* the court held that the decision about what to do with the vehicle of an intoxicated driver was one that officers routinely face and was an operational function, not protected by immunity from suit. *Id.* at 73–74. Furthermore, the court held that the officer had the right to control the vehicle once he arrested the driver and that he was obligated to act with ordinary care in determining what to do with the vehicle. *Id.* at 75–76. The court held that the trial court erred in granting summary judgment in favor of the city because of the factual issues

---

8. Minks alleged state law claims under §§ 319 and 324A of the Restatement (Second) of Torts (1965). I would hold that the cases cited which follow those sections are directed at a different kind of conduct than that alleged in Minks' complaint.

9. Negligent entrustment of a vehicle is addressed in § 390 of the Restatement (Second of Torts (1965)) and reads as follows:

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

surrounding whether the officer had acted with ordinary care. *Id.*

In the present case, the facts alleged show that the officers could have arrested Pina for driving while intoxicated, and could have impounded the vehicle. At a minimum, under the facts alleged in the complaint, the officers could have impounded the vehicle at least temporarily until it could be released safely. I would hold that Minks has alleged facts which, if later proven, are sufficient to establish that the officers had control of the vehicle for purposes of a claim of negligent entrustment.

I concur in the portion of the majority opinion which affirms the trial court's finding that Minks has failed to state a claim under 42 U.S.C. § 1983.