**CITY OF HAMMOND, City of Hammond Police Department, Appellants–Defendants,**

v.

**Jaclyn REFFITT, Individually and as Administratrix of the Estate of Scott Willis, Deceased, and as Next Friend to J.A.W. and C.E.R., both minor children, Appellees–Plaintiffs.**

No. 45A03–0205–CV–142.

Court of Appeals of Indiana.

June 12, 2003.

David W. Weigle, David W. Weigle & Associates, Hammond, IN, Attorney for Appellants.

Mark A. Thiros, Paul G. Stracci, Stephen C. Bower, Cohen & Thiros, Merrillville, IN, Attorneys for Appellees.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellants–Defendants, the City of Hammond and the City of Hammond Police (collectively "Hammond"), appeal from the trial court's denial of their motion for judgment on the evidence.

We reverse.[1]

*ISSUES*

Hammond raises seven issues on appeal, which we consolidate and restate as follows: whether the trial court properly denied its motion for judgment on the evidence.

*FACTS AND PROCEDURAL HISTORY*

On December 22, 1993, Hammond Police Officers Llanes and Malacina were on duty in separate patrol cars. At about 4:45 p.m., they received a dispatch regarding a 911 call reporting that an intoxicated person was sleeping in a parked car at the McDonald's restaurant located at 3639 169th Street in Hammond, Indiana. Officer Llanes arrived at the McDonald's parking lot first and found an intoxicated man asleep in the backseat of a parked car. Officer Llanes opened the car door and patted down the sleeping man for a weapon. The man did not wake up. When Officer Malacina arrived at the scene, he was able to wake the man up by throwing snow in his face. The man was identified as Scott Willis.[2] The officers determined that Willis was intoxicated. Specifically, the officers noted that Willis' speech was slurred and he was unable to steady himself. He asked the officers to leave him alone and let him sleep.

After discussing the situation, the officers determined that arresting Willis was not a good idea, although it was an available option. The officers decided that Willis more than likely pulled into the parking lot because he knew that he was too intoxicated to drive. They thought that arresting Willis might encourage him to operate a vehicle while intoxicated in the future instead of pulling off the road. Additionally, the officers felt that it was particularly unkind to arrest Willis so close to Christmas. Therefore, both of the officers concluded that Willis would "sleep off" his intoxication and drive away safely.

The officers consulted the manager of the McDonald's in order to obtain permission for Willis to sleep off his intoxication in the parking lot. Officer Malacina talked to the manager of the McDonald's first, but he was diverted to a hit and run accident in the immediate area. Officer Llanes resumed the conversation with the manager and instructed her to call the police department if there were any further problems. The manager consented to

---

1. Oral argument was held in this case on April 2, 2003, in Indianapolis, Indiana.

2. We note that Appellees–Plaintiffs in this case are as follows: Jaclyn Reffitt (Reffitt), individually and as the administratrix of the Estate of Scott Willis, the decedent, and as Next Friend to [JAW] and [CER], the minor children of Willis.

leaving Willis sleeping in the parking lot. Both of the officers believed that without the manager's consent they would have been obligated to arrest Willis for public intoxication.

Before leaving Willis in the McDonald's parking lot, Officer Llanes rolled the front passenger window up partially, leaving it about one and one-half inches open at the top. He also completely rolled up the left passenger window and covered Willis with a blanket. The temperature was around twenty-eight to thirty degrees. After leaving the McDonald's parking lot, Officer Llanes called the station with some notes regarding the call. He stated that Willis was breathing fine and that he would probably sleep into the night. Officer Llanes also indicated that he was going to the hit and run accident in the immediate area.

On December 23, 1993, at about 11:00 a.m., Willis was found dead in his car in the McDonald's parking lot. The cause of death was cardio-respiratory arrest due to hypothermia associated with alcohol abuse. As a result, on December 22, 1995, Reffitt filed a complaint against Hammond for the wrongful death of Willis on behalf of his minor children. On February 7, 1996, Hammond filed an answer to Reffitt's complaint. Subsequently, on December 2, 1996, an amended answer was filed.

Thereafter, on October 5, 1998, Hammond filed a Motion for Summary Judgment and a Memorandum in Support of its Motion for Summary Judgment. On December 4, 1998, Reffitt filed a Memorandum in Opposition to the Motion for Summary Judgment. On February 23, 1999, the trial court found that Hammond was not entitled to immunity, "as the facts as presented indicate that the actions complained of are not planning activities but are operational activities, and that the situation may have given rise to a private duty on the part of [Hammond] to [Reffitt's]

decedent." (Appellant's App. p. 4). Thus, the trial court denied Hammond's Motion for Summary Judgment.

Subsequently, a jury trial was held from March 25, 2002 through March 27, 2002. At the close of Reffitt's case-in-chief, Hammond entered a Motion for Judgment on the Evidence. The trial court held a hearing on this motion outside the presence of the jury. After hearing argument from both parties, the trial court denied Hammond's Motion for Judgment on the Evidence. Thereafter, Hammond rested its case and re-asserted the same motion, *i.e.* motion for judgment on the evidence. Later, on March 27, 2002, the jury rendered a verdict in favor of Reffitt in the amount of $150,000.00. On April 2, 2002, the trial court entered judgment on the verdict.

Hammond now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Judgment on the Evidence*

In the present case, Hammond contends that it was entitled to judgment on the evidence as a matter of law. Specifically, Hammond argues that it is entitled to judgment as a matter of law for the following reasons: 1) Hammond is immune from liability under the provisions of the Indiana Tort Claims Act (ITCA); 2) Hammond is immune from liability under the principles of common law immunity; and 3) Reffitt failed to establish a prima facie case of negligence.

 Trial Rule 50(A) of the Indiana Rules of Trial Procedure provides:

Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the

court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding the verdict.

The granting of a motion for judgment on the evidence is a matter committed to the sound discretion of the trial court, and will be reversed only if the court has abused its discretion. *City of Terre Haute v. Simpson*, 746 N.E.2d 359, 363 (Ind.Ct.App. 2001). Upon appeal, we employ the same standard as the trial court. *Id.* We consider the evidence in the light most favorable to the non-moving party. Judgment may be entered only if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim. *Dughaish ex rel. Dughaish v. Cobb*, 729 N.E.2d 159, 167 (Ind.Ct.App.2000), *trans. denied.*

## II. *Governmental Tort Immunity*

Hammond argues that the trial court erred in denying its motion for judgment on the evidence. Specifically, Hammond contends that under the Indiana Tort Claims Act and, alternatively, under common law, Hammond was entitled to governmental tort immunity.

### A. *Indiana Tort Claims Act*

■ Governmental immunity from suit is regulated by the ITCA. *See* Ind. Code § 34–13–3–3. Governmental authorities are subject to liability for torts committed by their agencies or employees unless one of the immunity provisions of the ITCA applies. *Minks v. Pina*, 709 N.E.2d 379, 382 (Ind.Ct.App.1999). Moreover,

whether a governmental entity is immune from liability under the ITCA is a question of law for the courts, although it may include an extended factual development. *Id.*

■ In the instant case, Reffitt's cause of action was based on allegations that Hammond was negligent and breached a duty owed to Willis. Specifically, Reffitt's claim of negligence bypasses the ITCA. However, Hammond argues that it is immune from liability under subsection (8) of the ITCA.[3]

Indiana Code section 34–13–3–3, in pertinent part, provides:

A governmental entity or an employee acting within the scope of employment is not liable if a loss results from:

(8) The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

Our supreme court has explained that the scope of "enforcement" extends well beyond traditional law enforcement activities, but is "limited to those activities in which a governmental entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof." *Mullin v. Municipal City of South Bend*, 639 N.E.2d 278, 283 (Ind.1994).

A leading case on subsection (8) of the ITCA is *Minks v. Pina*, 709 N.E.2d 379 (Ind.Ct.App.1999).[4] In *Minks*, immunity

---

**3.** Hammond and Reffitt cite to I.C. § 34–13–3–3(6) and I.C. § 34–13–3–3(7) in presenting their arguments on the applicability of immunity under the ITCA. However, we note that I.C. § 34–13–3–3 was amended in 2002 and these provisions are now found at I.C. § 34–13–3–3(7) and I.C. § 34–13–3–3(8), respectively. Therefore, we will use the current code sections in our discussion.

**4.** We again note that we use the current code, I.C. § 34–13–3–3(8). *Minks* refers to I.C. § 34–13–3–3(7) because at the time this case was written that was the proper codification of the subsection.

existed where two police officers pulled over an intoxicated motorist, decided not to arrest or detain the driver or the passenger because of the amount of time it would take to process the necessary paperwork, and instead instructed the passenger to drive home. At some point, the original driver resumed operation of the vehicle and eventually crossed the centerline of the road, struck another car, injuring all three occupants, two of whom died as a result. Moreover, the passenger was not a licensed driver and was later found to have nearly the same illegal blood alcohol content level as the original driver.

In that case, Minks alleged that the police officers "knew or should have known that both [the driver and the passenger] were dangerous and likely to cause bodily harm to others, if not controlled, yet they failed to exercise reasonable care to control them, in order to prevent them from doing such harm...." *Id.* at 383. While the *Minks* court recognized the egregious conduct of the police officers in that instance, it was not persuaded that the police officers' actions were outside the scope of subsection (8) immunity regarding enforcement, or failure to enforce a law, as contemplated by the ITCA. Accordingly, the *Minks* court determined that the apparent basis of Minks' negligence claim was that the police officer failed to properly enforce the law. Therefore, the *Minks* court held that, because the police officers failed to properly enforce the law, the government's activity fell squarely within the immunity provision of subsection (8).

*Minks,* 709 N.E.2d at 383. In doing so, the *Minks* court declined to establish a bright line rule that any actions taken after an officer determines not to arrest an individual are no longer considered enforcement. *Id.* The *Minks* court admitted that this result may have been harsh, but immunity was called for under the ITCA. *Id.*

The *Minks* case is applicable to the case at bar. In both cases, the police officers encountered persons who were found in an intoxicated state in a vehicle. Further, the police officers in both cases decided not to affect an arrest. In particular, the police officers in *Minks* were avoiding paperwork by not arresting the driver for driving while intoxicated. In the present case, the police officers decided not to arrest Willis because they wanted to encourage him not to drive while intoxicated in the future and because it was so close to Christmas. Officers Llanes and Malacina also believed that since the McDonald's manager agreed to allow Willis to remain in the parking lot in order to sleep off his intoxication, they did not have a reason to arrest Willis.[5] Moreover, in each case, shortly after the police officers encountered the intoxicated person, a death occurred in which the intoxicated person was involved. In both cases, the police officers failed to avert future harm, but did not create the risk of harm. Specifically, in both cases, the persons were responsible for creating the risk of harm due to their intoxicated state. Finally, in both cases, the decision of the

5. We note that the determination of whether Willis was committing a crime was not fully resolved at trial. At trial, Reffitt argued that Willis should not have been arrested. However, it is apparent that arrest was an option. Officer Llanes testified that arresting Willis was an option. Specifically, he testified that he and Officer Malacina based their decision not to arrest Willis, in large part, on whether the McDonald's manager wanted Willis re-

moved from the property. If the manager wanted Willis removed, then they would have arrested him for public intoxication pursuant to I.C. § 7.1–5–1–3. This section states, in relevant part, as follows: "it is a Class B misdemeanor for a person to be in a public place or a place of public resort in a state of public intoxication caused by a person's use of alcohol or a controlled substance ..." *See* I.C. § 7.1–5–1–3.

police officers not to arrest the individual was influenced by factors other than merely whether the individual was breaking the law. As mentioned above, in *Minks,* the police officers wanted to avoid paperwork and in the present case, the police officers believed that they were encouraging Willis not to drive while intoxicated in the future and doing him a favor by not arresting him so close to Christmas.

Here, Officers Llanes and Malacina, while acting within the scope of their employment, decided not to arrest Willis. We note that the *Minks* court declined to establish a bright line rule that any actions after an officer determines not to arrest an individual are no longer considered enforcement. *See id.* Therefore, we also decline to establish a bright line rule that any actions after an officer determines not to arrest an individual are no longer considered enforcement. Consequently, once Officers Llanes and Malacina decided not to arrest Willis, we find that they failed to enforce the law. As a result, Hammond's activity is squarely within the immunity provision. *See Minks,* 709 N.E.2d at 383; I.C. § 34-13-3-3(8).

With all of the above in mind, we find that no matter how harsh the result, the actions of Officers Llanes and Malacina were immune from liability under I.C. § 34-13-3-3(8). Therefore, we find that Hammond is entitled to immunity from liability under the ITCA. *See* I.C. § 34-13-3-3(8); *Minks,* 709 N.E.2d at 383; *Miller,* 777 N.E.2d at 1104. Thus, the trial court improperly denied Hammond's motion for judgment on the evidence. Accordingly, we find that it is not necessary to address the issues of common law immunity and negligence.

### CONCLUSION

Based on the foregoing, we conclude that Hammond was entitled to immunity under subsection (8) of the ITCA. Therefore, we conclude that the trial court erred by denying Hammond's motion for judgment on the evidence. *See Simpson,* 746 N.E.2d at 363.

Reversed.

BAKER and MATHIAS, JJ., concur.