ST. JOSEPH COUNTY POLICE DEPT., and Richard Seniff, in His Capacity as Sheriff of the St. Joseph County Police, Appellants,

v.

Patricia SHUMAKER, Individually and as Personal Representative of the Estate of Wayne Shumaker,

and

Jennifer M. Myers, individually and as Personal Representative of the Estate of Corby Allan Myers, and Caitlin Allan Myers, a minor, individually and by and through her mother and natural Guardian, Jennifer M. Myers, and Jerry D. Ganger, individually and as Personal Representative of the Estate of Lynn J. Ganger, Appellees.

No. 50A03–0310–CV–432.

Court of Appeals of Indiana.

Aug. 10, 2004.

James F. Groves, David E. Ballard, South Bend, IN, Attorneys for Appellants.

Daniel H. Pfeifer, Douglas E. Sakaguchi, Sweeney, Pfeifer, Morgan & Stesiak,

South Bend, IN, Attorneys for Estate of Shumaker.

Robert F. Gonderman, Jr., Craig A. Rieff, Gonderman Legal Corporation, P.C., South Bend, IN, Attorneys for Estate of Myers.

Mark A. Matthes, Yoder, Ainlay, Ulmer & Buckingham, LLP, Goshen, IN, Attorney for Estate of Ganger.

## OPINION

SULLIVAN, Judge.

Appellants, the St. Joseph County Police Department and Richard Seniff, in his capacity as Sheriff of the St. Joseph County Police (collectively "the Department"), bring this interlocutory appeal from the trial court's denial of their motion for summary judgment in a suit brought by Appellees, Patricia Shumaker individually and as the personal representative of the Estate of Wayne Shumaker, Jennifer Myers individually and as the personal representative of the Estates of Corby Allan Myers and Caitlin Allan Myers, a minor, and Jerry Ganger individually and as the personal representative of the Estate of Lynn J. Ganger ("the Plaintiffs").[1] Upon appeal, the Department presents three issues for our review, one of which we find dispositive: whether the trial court erred in determining that the Department was not entitled to governmental immunity under the Indiana Tort Claims Act ("ITCA").[2]

We reverse and remand.

The pertinent facts are undisputed.[3] On June 17, 1999, Philip Stroud was arrested and charged with attempted murder, battery, criminal recklessness, dealing in cocaine, possession of cocaine, and maintaining a common nuisance.[4] On July 14, 1999, while still in jail, Stroud was further charged with dealing in cocaine. Regarding this charge, Cause Number 71D08–9907–CF–410 ("Cause 410"), bond was set in the amount of $3,000. As a result of another incident, Stroud was charged on July 19, 1999 with dealing in cocaine. With regard to this charge, Cause Number 71D08–9907–CF–414 ("Cause 414"), bond was set at $5,000. On July 14, 2000, Stroud was released from jail after posting only $3,000 in bond on Cause 410. Because someone had made an improper entry, the Sheriff's Department's computer system indicated that there was no bond set for Cause 414 and instead stated that Stroud was to be released on his own recognizance on that charge. Therefore, Stroud was released without posting the additional $5,000 which should have been required. This turned out to be a tragic mistake, for on September 14, 2000, Stroud murdered the decedents Wayne Shumaker, Corby Allan Myers, and Lynn J. Ganger. On July 24, 2002, a jury found Stroud guilty of three counts of murder, three counts of felony murder, two counts of robbery, one count of attempted robbery, and one count of attempted burglary.

On June 6, 2001, Patricia Shumaker individually and as the personal representa-

1. Appellee Ganger has not filed a separate Appellee's brief but has instead joined in the brief submitted by Appellee Myers.

2. Ind.Code 34–13–3 (Burns Code Ed. Repl. 1998 & Supp.2004).

3. Both Appellees' briefs state that they agree with the facts stated in the Department's Appellant's brief. The statement of facts in the Department's brief is itself based upon the "undisputed facts" contained in Appellee

Ganger's response to the Department's motion for summary judgment. This document in turn refers to several "exhibits" which are unfortunately not included in the appendices. However, given that all parties agree as to the operative facts, we too accept these as true for purposes of our decision.

4. The record indicates that these charges were eventually dismissed.

tive of the Estate of Wayne Shumaker, filed a wrongful death action against the Department. The complaint alleged that the Department was negligent in "allowing Phillip Stroud to be released from custody before the proper bond was posted," and that this negligence resulted in Wayne Shumaker's death. Appellant's Appendix at 11. Thereafter, the Department answered and eventually moved for summary judgment on January 29, 2002.

On March 7, 2002, Jennifer Myers individually and as the personal representative of the Estates of Corby Allan Myers and Caitlin Allan Myers filed suit against the Department, alleging that Stroud was "negligently released" from the jail. *Id.* at 14. The complaint further alleged that the Department breached a duty to release Stroud "only upon the proper posting of bond ... and to exercise reasonable care with respect to the maintenance of custody of Philip Stroud." *Id.* On April 4, 2002, this action was consolidated with the complaint filed by Shumaker.

On August 23, 2002, Jerry Ganger as the personal representative of the Estate of Lynn J. Ganger filed suit against the Department, alleging that Stroud was "negligently released" from jail, causing the death of Lynn Ganger. *Id.* at 18. On October 11, 2002, this action too was consolidated with the complaint filed by Shumaker.

Eventually, on July 11, 2003, the trial court held a hearing on the Department's motion for summary judgment. On July 18, 2003, the trial court denied the motion for summary judgment. The Department filed a motion to certify the ruling for interlocutory appeal on August 14, 2003. The trial court granted the motion, and on December 9, 2003, this court accepted jurisdiction pursuant to Indiana Appellate Rule 14(B).

Upon appeal from a trial court's ruling upon a motion for summary judgment, our standard of review is well settled. Summary judgment is appropriate when the designated evidentiary matter reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Hammock v. Red Gold, Inc.,* 784 N.E.2d 495, 498 (Ind.Ct.App.2003), *trans. denied.* The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that there is an entitlement to judgment as a matter of law. *Hammock,* 784 N.E.2d at 498. If the moving party meets these requirements, the burden then shifts to the nonmovant to establish genuine issues of material fact for trial. *Id.* Upon appeal, we are bound by the same standard as the trial court. *Id.* We consider only those facts which were designated to the trial court at the summary judgment stage. *Id.* We do not reweigh the evidence, but instead liberally construe the designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact. *Id.* Even where the facts are undisputed, summary judgment is inappropriate if the record reveals an incorrect application of the law to the facts. *Id.*

■ Although the issue of immunity under the ITCA may at times require factual development, the issue remains a question of law for the courts. *Miller v. City of Anderson,* 777 N.E.2d 1100, 1103 (Ind.Ct. App.2002), *trans. denied.* We review such questions de novo and owe the trial court no deference. *Id.*

Here, the Department argues that the trial court should have granted summary judgment in its favor because it is immune to suit under the ITCA. The ITCA was enacted after our Supreme Court in

*Campbell v. State,* 259 Ind. 55, 284 N.E.2d 733 (1972), severely reduced the scope of the common law doctrine of sovereign immunity. *See generally Peavler v. Bd. of Comm'rs of Monroe County,* 528 N.E.2d 40 (Ind.1988). In *Campbell,* the Court wrote that the arguments in favor of governmental immunity were "questions which properly belong to the legislature...." 259 Ind. at 61, 284 N.E.2d at 736. In response to this, the General Assembly in 1974 passed the ITCA which lists a number of governmental activities which are immunized from tort liability. *See King v. Northeast Security, Inc.,* 790 N.E.2d 474, 478 (Ind.2003). At issue in the present case is what has been referred to as "law enforcement immunity." The law enforcement immunity provision is now located at Indiana Code § 34–13–3–3 (Burns Code Ed. Supp.2004) and provides as follows:

"A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following:

\* \* \*

(8) The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment." [5]

The Department claims that pursuant to Section 3(8), it is entitled to immunity from the suits brought by the Plaintiffs in that the alleged negligence resulted from the failure to enforce a law. The scope of the immunity afforded by Section 3(8) has gone through much change since its enactment.

In *Seymour Nat'l Bank v. State,* 422 N.E.2d 1223, 1226 (Ind.1981), *clarified upon reh'g* 428 N.E.2d 203, our Supreme Court interpreted the scope of Section 3(8) for the first time and determined from its plain language that governmental entities were immune for all acts of enforcement save false arrest and imprisonment. *Id.* Under the *Seymour* rule, the Court of Appeals decided *Indiana Dep't of Correction v. Stagg,* 556 N.E.2d 1338, 1341 (Ind. Ct.App.1990), *trans. denied,* holding that "law enforcement" immunity is provided to *any* governmental entity or employee acting within the scope of his employment, not just law enforcement officers.

Ten years after *Seymour,* the Supreme Court struck a new course in *Tittle v. Mahan,* 582 N.E.2d 796 (Ind.1991). In that case, a consolidation of two separate appeals, two inmates had killed themselves while in jail. In the first case the decedent's mother had warned the police that he had attempted suicide, the decedent himself said that he was depressed, and an "observation order" had been issued by the jail nurse with a "suicide precaution." *Id.* at 798. In the second case a man arrested for drunken driving was later found hanged in a cell occupied only by himself. In interpreting Section 3(8), the Court first looked at the state of the common law at the time the ITCA was adopted and concluded that governmental entities were not immune from tort claims resulting from a governmental entity employee's breach of a private duty owed to an individual but were immune from claims resulting from a breach of its public duties owed to all. The Court then addressed its opinion in *Seymour* by saying that although the result reached was correct, the opinion contained "dicta" which suggested that any law enforcement act within the

---

**5.** This provision was formerly found at Indiana Code § 34–43–3–3(7) and before that at Indiana Code § 34–4–16.5–3(7). Through-

out our discussion, we will use the current citation, i.e. Section 3(8).

scope of a law enforcement official's employment is immune. The *Tittle* Court held this to be no longer the law. Rejecting *Seymour*, the Court concluded that the plain meaning of "enforcement of the law" does *not* include activities associated with the administration of pre-trial detainees at a county jail. *Id.* at 801. The mandates imposed upon the sheriff under the statutes amounted to compliance with the law, not enforcement of it. *Id.* The Court therefore announced that activities included within the term "law enforcement" were limited to those activities attendant to effecting the arrest of those who may have broken the law. *Id.*

This course charted by the Supreme Court did not last long, for in *Quakenbush v. Lackey*, 622 N.E.2d 1284 (Ind.1993), the Court granted transfer to decide that a police officer traveling to the scene of a crime was not immune from civil liability for driving negligently. In its opening paragraph, the Court stated that it was abandoning the "dicta" of *Tittle* and was overruling *Seymour*. The facts in *Quakenbush* were that a patrol officer was driving to the scene of a domestic dispute in a marked police car with the headlights on but no emergency lights, sirens, or horns. The officer drove through an intersection and hit the plaintiff's car. The Court set forth the history of the cases interpreting the law enforcement immunity contained in Section 3(8), concluding that the statements in *Tittle* did not comport with any sound legal principle other than *stare decisis*, and therefore the Court would "begin anew" with their analysis of Section 3(8). *Id.* at 1287.

The *Quakenbush* Court began anew with a view of the state of the common law when the ITCA was enacted and the public-private duty dichotomy contained in the common law. Turning to Section 3(8), the *Quakenbush* Court concluded that *Sey-mour* was wrong in determining that Section 3(8) immunity was co-extensive with the statutory duties placed upon governmental employees. The Court also rejected the narrow definition of enforcement used in *Tittle*, stating that " 'adoption or enforcement of a law' ... is not limited to traditional law enforcement activities such as the arrest or pursuit of suspects by police. Rather, in its broader (and correct) meaning, Section 3([8]) applies to the decision of any governmental entity and its employees about whether to adopt or enforce any statute, rule, or regulation." *Id.* at 1287 n. 3. Although this seemingly broadened the definition of enforcement beyond that used in *Tittle*, the Court also limited the availability of law enforcement immunity by employment of the public-private duty distinction. *Id.* at 1291. *See also City of Anderson v. Davis*, 743 N.E.2d 359, 363 (Ind.Ct.App.2001), *trans. denied*. The *Quakenbush* Court harkened to Judge Robertson's original opinion in *Seymour*, which used a public-private duty test and stated that such analysis comported with the Legislature's intent in passing the ITCA. *Quakenbush*, 622 N.E.2d at 1289–90. The Court concluded:

"Section 3([8]) was intended to codify the common law as it existed at the time the Act was passed. The state of the common law was such that governments and their employees were subject to liability for the breach of private duties owed to individuals, but were immune from liability for the breach of public duties owed to the public at large." *Id.* at 1290–91.

Under such analysis, the *Quakenbush* Court held that the complaint in that case alleged driving in a negligent manner, a private duty, and that the immunity afforded by Section 3(8) did not apply.

The next year, in *Mullin v. Mun. City of South Bend*, 639 N.E.2d 278 (Ind.1994),

the Court further clarified the *Quakenbush* decision. There, the city dispatcher failed to send an ambulance to the scene of a house fire despite warnings that people may have been in the house. This failure was contrary to a departmental notice of when ambulances were to be dispatched. One victim in the house died and the other was injured. Suit was brought, and the city claimed immunity under Section 3(8). The city claimed that the policy of sending ambulances to occupied house fires was a rule or regulation which they could not be held liable for failing to enforce. The Court held that "following governmental policy is not the same as enforcing it, at least in the context of the [ITCA]." *Id.* at 283. Although reiterating that the scope of the term "enforcement of law" extends "well beyond 'traditional law enforcement activities such as the arrest or pursuit of suspects by police,' the cases cited in *Quakenbush* make clear that the scope of 'enforcement' is limited to those activities in which a governmental entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof." *Id.* Applying the rule as newly stated, the *Mullin* Court held that the city was neither compelling or attempting to compel obedience of another to its rule or regulation nor sanctioning or attempting to sanction a violation thereof and was not immune under Section 3(8). *Id.* The Court nevertheless held that the city owed no private duty to the victims, and affirmed summary judgment for the city. *Id.* at 285.

The public-private duty distinction, at least so far as common law governmental immunity is concerned, was abandoned by the Supreme Court in *Benton v. City of Oakland City,* 721 N.E.2d 224 (Ind.1999). A case with facts somewhat similar to ours was handed down subsequent to *Benton* in *Robins v. Harris,* 740 N.E.2d 914 (Ind.Ct. App.2000), *clarified upon reh'g,* 743 N.E.2d 1142 (Ind.Ct.App.2001). In that case, a female inmate brought action seeking to recover damages for a jailer's sexual misconduct involving her. One of the issues before the court was the applicability of the ITCA to the Sheriff for the intentional wrongs committed by the jailer. In discussing Section 3(8), a panel of this court relied upon *Tittle,* noting that although *Quakenbush* had abandoned the "dictum" of *Tittle* regarding limiting law enforcement to "activities attendant to effecting the arrest of those who may have broken the law," the essential holding was left intact.[6] 740 N.E.2d at 918 n. 5. The *Robins* court held that the jailer's acts, as in *Tittle,* were administrative and custodial in nature and not enforcement of the law, and the Sheriff was therefore not immune from suit under the ITCA.

Other cases have followed the definition of "enforcement" used in *Mullin.* See *City of Hammond v. Reffitt,* 789 N.E.2d 998 (Ind.Ct.App.2003) (applying *Mullin* definition of enforcement in holding that city was immune from suit where city police officers had decided to not arrest an intoxicated man asleep in a parked car and that man had later froze to death in the

**6.** Our Supreme Court granted transfer in *Robins,* 769 N.E.2d 586 (Ind.2002), to address the issue of consent as a defense, vacating the Court of Appeals on that issue, but summarily affirming otherwise. However, the parties settled the litigation before the Supreme Court could issue the opinion, and the appeal was dismissed. The court in *Davis, supra,* however, concluded that *Quakenbush* over-

ruled *Tittle.* See 743 N.E.2d at 363. We are inclined to agree. Whether it did so explicitly, the *Quakenbush* Court, by "begin[ning] anew" with its analysis of Section 3(8) and rejecting the reasoning of *Tittle,* effectively overruled that case. This is not to say, however, that the result reached in *Tittle* would necessarily be different under the *Quakenbush* analysis.

car), *trans. denied; Severson v. Bd. of Trustees of Purdue Univ.*, 777 N.E.2d 1181 (Ind.Ct.App.2002) (using *Mullin* definition in holding that university was immune under ITCA for the failure of university police to arrest a man who later killed decedent), *trans. denied; Miller*, 777 N.E.2d at 1104 (using *Mullin* definition in determining that city was immune where police officers mistakenly arrested woman for violating a protective order which had in fact been dismissed); *Davis*, 743 N.E.2d at 364–65 (applying *Mullin* definition in holding that city was immune from suit brought by deputy sheriff who was bitten by city police dog during search for a suspect); *Minks v. Pina*, 709 N.E.2d 379 (Ind.Ct.App.1999) (using *Mullin* definition in holding that city was immune where officers failed to arrest an intoxicated driver and instead instructed the intoxicated passenger to drive, eventually resulting in a fatal accident), *trans. denied; City of Valparaiso v. Defler*, 694 N.E.2d 1177 (Ind.Ct.App.1998) (using *Mullin* definition in holding that city was not immune because it had not sought to compel the obedience of another to the law but was instead forced to comply with the law by other governmental entities).

More recently, in *King v. Northeast Security, Inc.*, 790 N.E.2d 474 (Ind.2003), the parents of a student beaten up at school sued the school district and the security company hired by the school district. The school district contended that it was protected by governmental immunity pursuant to the ITCA and common law. In discussing Section 3(8), the *King* Court noted that *Benton* had specifically abandoned the public-private duty distinction in claims of immunity under common law, but had not *expressly* disavowed the public-private duty test in claims of statutory immunity. *Id.* at 482. Nevertheless, the *Benton* decision *implicitly* achieved this result. *Id.* The *King* Court therefore held

that courts remain free to interpret Section 3(8) *without* referring to the public-private duty test. *Id.* Thus, although not prohibiting resort to the public-private duty distinction, the *King* Court seems to have strongly discouraged its use.

The *King* Court further held that the language of Section 3(8) restricts immunity to the adoption and enforcement of laws (and a failure to do so) which are within the assignment of the governmental entity and that the legislature intended that a governmental entity be immune only for failing to adopt or enforce a law that falls within the scope of the entity's purpose or operational power. *Id.* at 483.

Applying this reasoning to the case before it, the *King* Court concluded that the school district in that case was not "enforcing" a law within the meaning of Section 3(8) when it provided for school security. Although schools are authorized to promulgate rules for school discipline, preventing crime is not an activity schools are expected to carry out pursuant to their "operational purpose." *Id.* In other words, "even though the school must reasonably supervise the students for safety reasons, it is not the mission of the school to prevent crime." *Id.* Therefore, the district had no immunity for failing to prevent an assault and battery. *Id.*

From the course of this case law, we can conclude several things. First, the broad rule of immunity from *Seymour* has clearly been overruled. However, the narrow scope of immunity set forth in *Tittle* has also been abandoned. *Quakenbush* and *Mullin* used the since-disapproved-of public-private duty test. Nevertheless, both of these cases, and even *Tittle* for that matter, drew a distinction between complying with or following the law and enforcement of the law. Indeed, *Mullin* defined "enforcement of the law"

as compelling or attempting to compel the obedience of *another* to laws, rules, or regulations, and the sanctioning or attempt to sanction a violation thereof. 639 N.E.2d at 282. The *King* case, although further withdrawing from the public-private duty distinction, did not define enforcement. Instead, *King* appears to have imposed another restriction upon the scope of the "enforcement of law" immunity afforded by the ITCA—that the "adoption" or "enforcement" must be done (or failed to have been done) by a governmental unit whose operational purpose or "mission" was to adopt or enforce such laws, rules, or regulations.[7]

■ We therefore conclude that the "enforcement" spoken of in what is now Section 3(8) of the ITCA means compelling or attempting to compel the obedience of *another* to laws, rules, or regulations, and the sanctioning or attempt to sanction a violation thereof. It would also, by the plain meaning of the statute, include the failure to do such. However, it does not include compliance with or following of laws, rules, or regulations by a governmental unit or its employees. Neither does it include failure to comply with such laws, rules, or regulations. Moreover, a governmental entity will be immune only for adopting or enforcing, or failure to adopt or enforce, a law, rule, or regulation within the scope of the entity's purpose or opera-

tional power. We now turn to the task of applying this law to the case at bar.

■ The Department insists that the Plaintiffs' claims amount to an allegation of a failure to enforce the law, in this case a bond requirement. In support, the Department cites several pre-*Tittle* cases which followed the reasoning of *Seymour*, a case which has been specifically overruled. For this reason, we do not find these cases instructive. The Plaintiffs cite to *Tittle* and *Robins* to support their claim that the administration of a county jail is not law enforcement and not immune under Section 3(8) of the ITCA. However, as previously mentioned, the legal reasoning underlying *Tittle*, if not the result reached in that case, has been abandoned.[8] So far as we are able to determine from the admittedly somewhat confusing state of the case law, the determination of the case at bar depends upon whether the Department's employees were enforcing (or failing to enforce) the law versus simply complying with or failing to comply with the law.

The Department argues that the Plaintiffs' claims are essentially that the Department failed to enforce the trial court's bond order against Stroud. We agree with the Department that the bond order is a law for purposes of Section 3(8). *See Miller*, 777 N.E.2d at 1102 (involving city police mistakenly arresting plaintiff for violation of previously dismissed trial court

---

7. Although *King* stated that a variety of administrative and executive functions would be immune, it did not suggest that enforcement included compliance with or the following of rules or regulations by the governmental unit itself. Thus, the facts present in the *Mullin* case would not necessarily have led to a different result had the reasoning of *King* been applied. Although the rules and regulations at issue in *Mullin* were within the scope of the operational purpose of the fire department, the fire department was not attempting

to enforce such rules upon others, but simply failed to comply with such itself.

8. Under the definition of enforcement we use, the result in *Tittle* would have been the same. The defendants in that case were not alleged to have failed to enforce the law in the sense of compelling the obedience of another to laws, rules, or regulations. It was instead that the defendants had failed themselves to comply with the applicable laws, rules, or regulations.

protective order). However, the Plaintiffs' claims could also be viewed as simply a failure of the Department itself to comply with the trial court's bond order. This is essentially what the Plaintiffs claim, arguing that, as was the case in *Tittle* and *Robins*, this is simply a case of the Department's administration of pre-trial detainees.

Our case is factually different from *Tittle*, for here we have not only the failure of the Department to follow the applicable laws, rules, and regulations itself (as was the case in *Tittle*), but also the failure of the Department to enforce the bond against Stroud. In other words, the Plaintiffs, by claiming that the Department negligently released Stroud without posting the proper bond, necessarily allege that the Department failed to enforce the law, i.e. compel the obedience of another (Stroud) to the applicable laws, rules, and regulations (the trial court's bond order). This is essential to their claim of negligence. We therefore hold that the Department is entitled to immunity under Section 3(8). Furthermore, under the *King* analysis, the Department is within the scope of Section 3(8) immunity in that it is within the operational purpose or mission of the Department to enforce bond orders and run the jail.

Having so concluded, it is unnecessary for us to consider whether the Department is entitled to immunity under the common law. *See King*, 790 N.E.2d at 482; *Benton*, 721 N.E.2d at 232 (both observing that, in general, it is only after a determination is made that a governmental unit is *not* immune under the ITCA that a court undertakes a common law analysis). It is also unnecessary for us to address the Department's arguments regarding the bail statutes. *See Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind.2003) (stating that immunity assumes negligence but de-

nies liability). Because we hold that the Department is immune from suit under Section 3(8) of the ITCA, the trial court erred in denying the Department's motion for summary judgment.

The judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.

MAY, J., and VAIDIK, J., concur.