## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 08 2020, 8:33 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

David B. Wilson
Franklin, Indiana

ATTORNEYS FOR APPELLEE

James S. Stephenson
Pamela G. Schneeman
Stephenson Morow & Semler
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Neil Dixon, as Special Administrator of the Estate of Clayton Dixon, Deceased, and Ella Dixon, <br><br> *Appellants-Plaintiffs,* <br><br> v. <br><br> City of Greenwood, <br><br> *Appellee-Defendant.* | July 8, 2020 <br><br> Court of Appeals Case No. 20A-CT-146 <br><br> Appeal from the Johnson Superior Court <br><br> The Honorable Frank M. Nardi, Special Judge <br><br> Trial Court Cause No. 41D04-1808-CT-116 |

**Kirsch, Judge.**

[1] Neil Dixon, as Special Administrator of the Estate of Clayton Dixon, Deceased, and Ella Dixon (together, "the Dixons") appeal the trial court's grant of summary judgment in favor of the City of Greenwood ("the City"). This case arises out of Reese Keith's ("Keith") armed robbery of Clayton Dixon ("Clayton") and his wife Ella Dixon ("Ella") at their home and involves the Dixons' claim that, but for negligence on the part of City's police officers, Keith would not have committed the criminal acts against them. The Dixons sought to hold the City liable for the injuries and losses they suffered because of Keith's crimes. On appeal, the Dixons raises several issues, of which we find the following dispositive: whether the trial court erred in determining that the City was entitled to governmental immunity under the Indiana Tort Claims Act ("ITCA").

[2] We affirm.

## Facts and Procedural History

[3] On May 14, 2017 at approximately 1:15 p.m., Keith was involved in a car accident in Greenwood, Indiana, where he rear-ended another vehicle. *Appellant's App. Vol. II* at 60; *Appellant's App. Vol. III* at 59, 113. Keith did not remain at the scene of the accident and, instead, fled on foot. *Appellant's App. Vol. II* at 60; *Appellant's App. Vol. III* at 59, 113. He was located a short time later and arrested for the crimes of operating a vehicle while intoxicated, theft, possession of a hypodermic needle, leaving the scene of an accident, possession of a stolen vehicle, giving a false identity statement, and possession of

paraphernalia. *Appellant's App. Vol. II* at 61; *Appellant's App. Vol. III* at 59, 113. At this time, based on Keith's appearance and behavior, the police believed that he was suffering a drug overdose, and he was taken by ambulance to Community South Hospital in Greenwood for evaluation. *Appellant's App. Vol. II* at 61; *Appellant's App. Vol. III* at 59, 114. Keith remained in custody while he was treated by the hospital staff. *Appellant's App. Vol. II* at 61; *Appellant's App. Vol. III* at 59. After the hospital staff examined Keith and medically cleared him, officers with the Greenwood Police Department transported him to the Johnson County Jail in Franklin, Indiana. *Appellant's App. Vol. II* at 61; *Appellant's App. Vol. III* at 60.

[4] When he arrived at the Johnson County Jail, Keith complained of pain associated with the earlier motor vehicle accident and the Greenwood Police Department officers took Keith to Johnson Memorial Hospital in Franklin for further medical evaluation. *Appellant's App. Vol. II* at 62; *Appellant's Ap. Vol. III* at 60. The officers remained with Keith while he was examined, and after he was medically cleared by the hospital staff, the officers transported him back to the Johnson County Jail. *Appellant's App. Vol. II* at 62; *Appellant's App. Vol. III* at 60. When he arrived at the Johnson County Jail the second time, Keith appeared to suffer a seizure, and as a result, the Greenwood Police Department officers took Keith back to Johnson Memorial Hospital for yet another medical evaluation. *Appellant's App. Vol. II* at 62; *Appellant's App. Vol. III* at 60. The officers remained with Keith while he was examined by the hospital staff, and a doctor informed them that due to Keith's seizure activity, the hospital could not

medically clear him and would have to keep him overnight, if not longer, for observation. *Appellant's App. Vol. II* at 62; *Appellant's App. Vol. III* at 60; *Appellant's Suppl. App. Ex. 5* at 1:05:05-1:06:45. The doctor asked the officers if they were going to "do a release." *Appellant's Suppl. App. Ex. 5* at 1:05:05-1:06:45. The officers called their sergeant, who advised them that they should allow Keith to remain at the hospital to receive whatever medical care and treatment he required and return to their regular duties. *Appellant's App. Vol. II* at 62; *Appellant's App. Vol. III* at 60; *Appellant's Suppl. App. Ex. 5* at 1:05:05-1:06:45.

[5] Another sergeant was at the hospital at that time, and after considering the charges for which Keith was arrested, confirmed that the officers could allow Keith to remain at the hospital to receive the medical care he required and return to their regular duties. *Appellant's App. Vol. II* at 62; *Appellant's App. Vol. III* at 60; *Appellant's Suppl. App. Ex. 5* at 1:05:05-1:06:45. At approximately 11:00 p.m., the officers left Keith at the hospital and returned to their regular duties. *Appellant's App. Vol. II* at 62; *Appellant's App. Vol. III* at 60. At that time, Keith was either sedated or asleep in his hospital bed, was hooked up to medical monitors, and had an IV line inserted. *Appellant's Suppl. App. Ex. 5* at 1:05:05-1:06:45; *Appellant's App. Vol. II* at 78.

[6] On May 15, 2017 at approximately 4:24 a.m., without the knowledge of the hospital staff, Keith got up out of his hospital bed and left the building. *Appellant's App. Vol. II* at 63; *Appellant's App. Vol. III* at 61. Wearing nothing but his hospital gown, he walked to the home of Clayton and Ella Dixon, who lived

near the hospital, and hid in their garage for several hours. *Appellant's App. Vol. II* at 63; *Appellant's App. Vol. III* at 61. When Clayton and Ella left their home to run errands, Keith entered the house and put on some of Clayton's clothing. *Appellant's App. Vol. II* at 63, 81; *Appellant's App. Vol. III* at 61. When Clayton and Ella returned, Keith was still in their home and held them at gunpoint, using guns he found in the home. *Appellant's App. Vol. II* at 63, 81; *Appellant's App. Vol. III* at 61. Keith duct taped Clayton and Ella to chairs, placing them in fear, and left the scene by stealing their car.[1] *Appellant's App. Vol. II* at 63; *Appellant's App. Vol. III* at 62.

[7] On August 2, 2018, the Dixons filed a complaint, alleging that, upon taking custody of Keith and transporting him to the hospital in Franklin, the City had a duty to use reasonable care to control Keith's conduct so as to prevent him from causing physical harm to others. *Appellant's App. Vol. II* at 64; *Appellant's App. Vol. III* at 62. The Dixons claimed that the City breached its duty of reasonable care in one or more of the following ways by:

> (a) failing to take Keith to a secure medical facility for evaluation;

> (b) leaving Keith unattended at [the hospital] while he was medically unstable;

---

[1] Keith was later arrested, charged, and convicted for the crimes against Clayton and Ella.

(c) failing to verify Keith's identity and the outstanding warrants for Keith's arrest before leaving Keith unattended;

(d) failing to verify Keith's identity and Keith's criminal history before leaving Keith unattended; and

(e) failing to use reasonable care in controlling Keith's conduct to prevent Keith from harming others.

*Appellant's App. Vol. II* at 64; *Appellant's App. Vol. III* at 62. The Dixons further alleged that these breaches allowed Keith the opportunity to commit the crimes that victimized them and that the City should compensate them for their injuries and losses. *Appellant's App. Vol. II* at 64; *Appellant's App. Vol. III* at 62.

[8] On August 2, 2019, the City filed a motion for summary judgment, arguing that it was entitled to immunity from the Dixons' claims under both Indiana common law and under the ITCA, and that, even if it did not have immunity, the City could not be liable to the Dixons because it did not owe them a duty to protect them from Keith's crimes. *Appellant's App. Vol. II* at 40-56.

[9] Clayton died on April 23, 2019, almost two years after the armed robbery, and his son, Neil Dixon, was appointed the Special Administrator of the Estate of Clayton Dixon to continue in litigating Clayton's claims in this action. *Appellant's App. Vol. II* at 70, 99-105; *Appellant's App. Vol. III* at 58-64. On September 23, 2019, the trial court allowed the Dixons to file an amended complaint to reflect Neil Dixon's status as the real party in interest as to his father's claims. *Appellant's App. Vol. II* at 86-87, 98. The trial court heard

argument on the City's summary judgment motion on November 7, 2019, and after taking it under advisement, issued an order on January 10, 2020, granting the City's motion and entering judgment in the City's favor. The Dixons now appeal.

## Discussion and Decision

[10] When reviewing the grant of summary judgment, our standard of review is the same as that of the trial court. *FLM, LLC v. Cincinnati Ins. Co.*, 973 N.E.2d 1167, 1173 (Ind. Ct. App. 2012) (citing *Wilcox Mfg. Grp., Inc. v. Mktg. Servs. of Ind., Inc.*, 832 N.E.2d 559, 562 (Ind. Ct. App. 2005)), *trans. denied*. We stand in the shoes of the trial court and apply a de novo standard of review. *Id.* (citing *Cox v. N. Ind. Pub. Serv. Co.*, 848 N.E.2d 690, 695 (Ind. Ct. App. 2006)). Our review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); *Thornton v. Pietrzak*, 120 N.E.3d 1139, 1142 (Ind. Ct. App. 2019), *trans. denied*. Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). For summary judgment purposes, a fact is "material" if it bears on the ultimate resolution of relevant issues. *FLM*, 973 N.E.2d at 1173. We view the pleadings and designated materials in the light most favorable to the non-moving party. *Id.* Additionally, all facts and reasonable inferences from those facts are construed in favor of the non-moving party. *Id.* (citing *Troxel Equip. Co. v. Limberlost Bancshares*, 833 N.E.2d 36, 40 (Ind. Ct. App. 2005), *trans. denied*). The initial burden is on the moving party to demonstrate the absence of

any genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to come forward with contrary evidence showing an issue for the trier of fact. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

[11] A trial court's grant of summary judgment is clothed with a presumption of validity, and the party who lost in the trial court has the burden of demonstrating that the grant of summary judgment was erroneous. *Henderson v. Reid Hosp. and Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied*. We will affirm upon any theory or basis supported by the designated materials. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

[12] The Dixons contend that the trial court erred in granting summary judgment in favor of the City and finding that the City was entitled to immunity under the ITCA. Although the Dixons acknowledge that governmental entities are entitled to immunity under the ITCA in situations where the government entities are enforcing or failing to enforce a law, they argue that in the present situation the City was not enforcing the law when the officers made the decision to release Keith from custody. The Dixons assert that the release of Keith did not involve a decision to investigate a crime or whether to arrest Keith for committing a crime, and instead, the decision to release Keith was a violation of the statute requiring a person arrested without a warrant to be released only after a judicial officer makes a bond determination that considered the risk Keith posed to others.

[13]     Here, the trial court, in granting summary judgment in favor of the City, concluded that the City was entitled to immunity pursuant to Indiana Code section 34-13-3-3(8) of the ITCA, which provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: . . . [t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment." The ITCA allows suits against governmental entities for torts committed by their employees but grants immunity under the specific circumstances enumerated in Indiana Code section 34-13-3-3. *Savieo v. City of New Haven*, 824 N.E.2d 1272, 1275 (Ind. Ct. App. 2005) (citing *Mangold ex rel. Mangold v. Dep't of Natural Res.,* 756 N.E.2d 970, 975 (Ind. 2001)). The determination of whether a governmental entity is immune from liability under the ITCA is a question of law for the court to decide. *Id*. "Because the ITCA is in derogation of the common law, we construe it narrowly against the grant of immunity," and the "party seeking immunity bears the burden of establishing that its conduct comes within the ITCA." *Id*. Immunity assumes negligence but denies liability. *Bartholomew Cty. v. Johnson*, 995 N.E.2d 666, 672 (Ind. Ct. App. 2013) (citing *Peavler v. Bd. of Comm'rs of Monroe Cty.,* 528 N.E.2d 40, 46-47 (Ind. 1988)). "'The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment.'" *Id*. (quoting *Bushong v. Williamson,* 790 N.E.2d 467, 472 (Ind. 2003)).

"For purposes of Indiana Code Section 34-13-3-3(8), 'enforcement' has been defined as 'those activities in which a government entity or its employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof.'" *Savieo*, 824 N.E.2d at 1275 (quoting *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002), *trans. denied*). Indiana courts have found immunity under Indiana Code section 34-13-3-3(8) in circumstances involving the enforcement and non-enforcement of laws, where injury is caused by a decision to not arrest an individual for a violation of the law, regardless of whether the injury is to a third party or the individual who was not arrested. For example, in *Minks v. Pina*, 709 N.E.2d 379 (Ind. Ct. App. 1999), *trans. denied*, immunity was found against claims of injury by a third party caused by a drunk driver, where the driver was stopped by police and released on condition that the passenger drive the vehicle, but after being released, the original driver resumed driving and caused the accident which resulted in the plaintiff's injury. *Id*. at 382-83. In *City of Hammond v. Reffitt*, 789 N.E.2d 998 (Ind. Ct. App. 2003), *trans. denied*, immunity was found where law enforcement officers discovered an intoxicated man sleeping in his car in a parking lot and decided to not arrest the man, leaving him sleeping in his car, where he was found dead the next day with the cause of death being cardio-respiratory arrest due to hypothermia associated with alcohol abuse. *Id*. at 1000, 1003. A panel of this court found that the officers' decision not to make the arrest amounted to a failure to enforce the law and was therefore entitled to immunity under Indiana Code section 34-13-3-3(8). *Id*. at 1003.

Immunity has also been found in other circumstances involving the enforcement and non-enforcement of laws and acts or omissions taken by law enforcement officers within their law enforcement capacity. Immunity has been found where a law enforcement officer was alleged to have been negligent in failing to make an arrest that would have prevented a murder. *Severson v. Bd. of Trustees of Purdue Univ.*, 777 N.E.2d 1181, 1202 (Ind. Ct. App. 2002), *trans. denied*. A law enforcement officer's failure to pursue delinquency charges of child molestation against a perpetrator was also found to be immune under the statute. *F.D. v. Ind. Dep't of Child Servs.*, 1 N.E.3d 131, 139 (Ind. 2013). Immunity has been found for failure to enforce the law when an inmate was negligently released on a lower bond than what had been specified by the trial court. *St. Joseph Cty. Police Dep't v. Shumaker*, 812 N.E.2d 1143, 1151 (Ind. Ct. App. 2004), *trans. denied*. A law enforcement officer was found to be immune against a negligence claim based upon the officer's failure to take an individual into custody to prevent that individual from committing suicide. *Savieo*, 824 N.E.2d at 1275-76. Immunity was also found for a city's failure to prevent a plaintiff's injuries by failing to enforce its procedures for determining whether an animal was dangerous. *Davis v. Animal Control-City of Evansville*, 948 N.E.2d 1161, 1165 (Ind. 2011).

[16] Here, Keith was in the custody of the City's officers when he had a medical emergency that necessitated that he be taken to the hospital. Once there, the hospital staff informed the officers that due to Keith's seizure activity, the hospital could not medically clear him and would have to keep him overnight,

if not longer, for observation. After consulting with a supervisor, who advised the officers that they should allow Keith to remain at the hospital to receive whatever medical care he required and return to their regular duties, the officers released Keith from their custody and left him at the hospital to receive medical treatment. The officers' actions in releasing Keith from their custody were essentially unarresting him and making the determination to not sanction Keith's violation of the law at that time. We conclude that the City's officers were involved in the enforcement of the law when they released Keith to the hospital for medical treatment as the officers' decision was, in fact, a decision not to enforce the law and was subject to immunity under the ITCA. *See Shumaker*, 812 N.E.2d at 1151 (concluding that the "enforcement" spoken of in section 3(8) of the ITCA means compelling or attempting to compel the obedience of another to laws, rules, or regulations, the sanctioning or attempt to sanction a violation thereof, and the failure to do such).

[17] The Dixons also assert that the City cannot be immune under the ITCA because the ITCA does not shield the officers from liability for breach of a statutory duty and that the decision to release Keith was a violation of the statute requiring a person arrested without a warrant to be released only after a judicial officer makes a bond determination that considered the risk the person posed to others. However, although the Dixons make this contention, there is no citation to the statute or any cogent argument regarding the City's violation of this statute in its argument regarding immunity under the ITCA. In their argument concerning whether the City had a duty of care to them and in their

reply brief, the Dixons do cite Indiana Code section 35-33-7-1, which states, "a person arrested without a warrant for a crime *shall be taken promptly before a judicial officer*: . . . in the county in which the arrest is made." Ind. Code § 35-33-7-1(a)(1) (emphasis added). The Dixons contend that the statute's requirements would have been satisfied by the City's officers transferring Keith's custody to the Johnson County Sheriff and that upon accepting custody of Keith, the Sheriff would have accepted the statutory duty to take Keith before a judicial officer. It is clear that under Indiana law that once Keith was incarcerated based upon the arrest that it would have been the obligation of the Sheriff, who was detaining him, to bring him before a judicial officer if he did not post bond pursuant to the Johnson County bond schedule. However, the City's officers were never able to get Keith to the point where he was medically stable enough to be incarcerated in the Johnson County jail as he had three medical emergency situations after his arrest that necessitated that he be taken to the hospital.

[18] In *Patrick v. Miresso*, 848 N.E.2d 1083 (Ind. 2006), our Supreme Court held that the ITCA's law enforcement immunity "does not shield governmental entities and personnel from liability resulting from a breach of the statutory duty to operate emergency vehicles 'with due regard for the safety of all persons.'" *Id.* at 1087 (quoting Ind. Code § 9-21-1-8(d)(1)). There, the statute violated by the law enforcement officer, Indiana Code section 9-21-1-8, specifically applied to a person who drives an authorized emergency vehicle when: (1) responding to an emergency call; (2) in the pursuit of an actual or suspected violator of the law;

or (3) responding to, but not upon returning from, a fire alarm. Ind. Code § 9-21-1-8(a). It specifically directed to whom the statute applied and how the specified individuals should conform their actions.

[19] Here, however, the statute that the Dixons maintain was violated by the City's officers does not specify to whom the statute is directed and who must take the arrestee promptly before a judicial officer. Therefore, the plain language of the statute does not support the notion that the City's officers as the arresting officers, as opposed to the Sheriff as the custodian of individuals after being booked into the jail, had a duty to take Keith promptly before a judicial officer. Additionally, our Supreme Court has stated that the purposes of Indiana Code section 35-33-7-1's requirement that an arrestee be promptly taken before a judicial officer are to: advise arrestees of the charges against them; advise arrestees of their constitutional rights; provide arrestees with attorneys if they cannot afford to hire one; and determine whether there is sufficient evidence that the crime charged has been committed and that the accused has committed it. *May v. State*, 502 N.E.2d 96, 104-05 (Ind. 1986) (citing *Nacoff v. State*, 256 Ind. 97, 102, 267 N.E.2d 165, 168 (1971)). Thus, the statute's purpose is to protect the arrestee's constitutional rights and not to protect the general public or persons like the Dixons.

[20] Further, as noted by the previously-cited cases, the officers could have made the decision not to arrest Keith, and at any time during their investigation, they could have made a determination that reasons existed to terminate the arrest prior to incarceration, such as the discovery of exculpatory evidence. *See Reffitt*,

789 N.E.2d at 1003; *Minks*, 709 N.E.2d at 382-83. Due to Keith's continued medical issues, the officers decided to release him to the care of a hospital for medical treatment, terminate the arrest, and resume their other duties. In doing so, they were making a decision to not enforce the law and are therefore immune under Indiana Code section 34-13-3-3(8) of the ITCA. Having so concluded, it is unnecessary for us to consider whether the City is entitled to immunity under the common law or whether the City had a duty of care to the Dixons. *See Shumaker*, 812 N.E.2d at 1151. The trial court did not err in granting summary judgment in favor of the City.

[21] Affirmed.

Najam, J., and Brown, J., concur.